CHARLES J. HARNEY, Appellant, *vs.* CHARLES F. HELL-
GREN, Appellee.

*Opinion filed June 16, 1926.*

1. SPECIFIC PERFORMANCE—*when vendee's assignee cannot en-
force specific performance.* The vendee's assignee of a contract
for the purchase of real estate, while it is executory and nothing
remains to be done but to pay the purchase price or a balance
thereof, may tender the price and on refusal by the vendor compel
specific performance, but where the contract calls for notes of the
vendee, secured by a mortgage, as a part of the purchase price,
and there is no provision making the contract binding on the heirs
or assigns of the parties, the assignee of the vendee cannot compel
the vendor to accept the notes and mortgage of the assignee and
make the assignee the personal debtor of the vendor, without the
latter's consent.

2. SAME—*party seeking performance must show right to relief.*
Where the specific performance of a contract is sought to be en-
forced in equity, it is incumbent upon the complainant to show
by evidence such a state of facts that equity and good conscience
would require the court to grant the relief sought.

APPEAL from the Circuit Court of Cook county; the
Hon. IRA RYNER, Judge, presiding.

GEORGE W. PLUMMER, LAURENCE M. FINE, and ROB-
ERT D. MELICK, for appellant.

SONNENSCHEIN, BERKSON, LAUTMANN & LEVINSON,
for appellee.

Mr. JUSTICE HEARD delivered the opinion of the court:

Appellant filed in the circuit court of Cook county his
bill in chancery praying for the specific performance of a
contract for the sale of real estate. Appellee appeared and
filed an answer, in which he denied appellant's right to
specific performance of the contract. Issues having been

formed the cause was referred to a master in chancery, who took the evidence in the case, and upon report thereof being made to the court a decree was entered dismissing appellant's bill for want of equity, and from this decree an appeal has been perfected to this court.

The contract of which specific performance is sought was entered into on May 8, 1922, between Samuel W. Maltz and Julius L. Marks and appellee, by which appellee agreed to sell and Maltz and Marks agreed to purchase certain real estate in Chicago, and this is the contract which is sought to be specifically enforced in this case. The purchase price was $55,000, payable $500 cash, $27,000 within five days after the title had been examined at the office of George C. Bour & Co., in Chicago, and the balance ($27,500) payable on or before two years after date, with interest from the date of the delivery of the deed, "to be secured by the purchasers' notes and mortgage or trust deed" on the premises. Evidence of title was to be furnished by the vendor within a reasonable time. The purchasers were to state objections within ten days thereafter, or if none, to state that the title was satisfactory. The vendor was to cure defects, if any, within sixty days, and if not so cured the purchasers could elect, within ten days thereafter, to take title. Time was made of the essence of the contract, and it was provided therein that if the purchasers failed to perform the contract at the time and in the manner specified, the earnest money paid should, at the option of the vendor, be retained by him as liquidated damages. It was provided in the contract that the notices required and given by the terms of the contract should be notices in writing signed by or on behalf of the party giving the same, and that the same might be served either upon the other party or his agent. On June 5, 1922, there was mailed by registered mail to Maltz and Marks, at Marks' office in the Chicago Exchange building, a letter of opinion of the Chicago Title and Trust Company showing the title of the premises to be clear in

appellee and notifying them to make arrangements to consummate the contract within five days after that date. This notice was received at Marks' office in due course of mail and receipted for by Catherine Bender, a stenographer, a part of whose business was to give receipts for registered letters. No attention was paid by either Marks or Maltz to this notice.

On August 26, 1922, Marks assigned his interest in the contract to Maltz. This assignment contains an assumption by Maltz of the obligations of the contract and an agreement by him to perform the same. Marks testified that he was not at any time financially able to perform the contract. In September, 1922, Maltz had a conversation with Bour, the broker through whom the original agreement was made. Bour and Maltz do not agree as to what was said in that conversation. Maltz testified that Bour came to his office and said that he wanted additional earnest money in order to go ahead with the deal and asked for $2000; that he gave Bour a check and told him he wanted to close the deal as soon as possible; that a week later Bour returned and said the check was rejected and that he would keep the check as something looked funny and he would try to get the deal closed up; that he never at any time asked further time, and that he was always ready to close the deal and always had the money, and that he so informed Bour. Bour's version of the conversation is that Maltz said he wanted to go through with the deal but was at the time unable to do so and wanted further time by giving additional earnest money; that he told Maltz that the trouble with the transaction was that there was not enough earnest money put up at the time to suit the seller, and that Maltz gave him a check for $2000 to give the seller, to apply as additional earnest money; that appellee rejected the check and it was never cashed; that when he told Maltz that the check was rejected, Maltz said that that was all they could do.

While Maltz testifies that at all times prior to his assignment of the contract to appellant he was ready, able and willing to carry it out, his testimony in that respect is much weakened by the fact that in January, 1923, he gave a mortgage for $135,000, covering all his assets of every kind, to complete building construction contracts, and that in June, 1923, he was declared bankrupt, and when examined as to his financial status gave evidence tending to show that he was financially embarrassed for six months prior to the giving of the $135,000 mortgage, and also by the fact that during September, 1922, his account at the Greenebaum Bank was overdrawn on eighteen different days. It is also weakened by the fact that at no time did he give any intimation to appellee of such readiness. His willingness to give the $2000 check for additional earnest money when he was under no obligation to do so, tends to show that he knew he was then in default in not complying with the five-day notice and tends to corroborate Bour's version of the check transaction. His failure to take any further steps in the matter tends to give credence to Bour's statement that when Maltz was informed of the rejection of the check he said, "That is all we can do." No reasonable explanation can be deduced from the evidence for appellee's rejection of the $2000 check other than that appellee and his agent, Hedberg, then considered that Maltz and Marks, by their failure to consummate the contract within five days after the receipt of the notice of June 8, 1922, had forfeited all rights under the contract.

On December 15, 1922, Maltz assigned his interest in the contract to appellant, the assignment being made in blank and appellant's name being thereafter inserted. The original contract was not in terms made to run with the land and contained no provision that it was to be binding upon the heirs and assigns of the parties. The assignment of Maltz to appellant contained no provision by which appellant assumed any liability thereunder and no provision

322-9

by which appellant agreed to carry out the undertakings of Maltz and Marks therein contained. There was no mutuality between appellant and appellee, and appellee by reason thereof could not have compelled appellant, by specific performance, to carry out the undertakings of Maltz and Marks. Appellant had no personal interest in the matter but only acted as a dummy for one Getler, whose interest in the matter was not disclosed to appellee until the hearing before the master, and appellant was represented in the transaction by his brother, and neither he, appellant nor Getler, after the assignment of the contract from Maltz, took any steps in the matter until January, 1924, when, after presenting the matter to appellee's attorney, appellant's agent was informed by the attorney that appellant had no right to a deed. Appellant's brother then employed an attorney, who wrote a letter to appellee, and in February, 1924, appellant's brother, with an attorney, went to the office of Bour & Co. and had an interview with Bour. The attorney made a demand upon Bour for the delivery of the deed and appellant's brother tendered Bour $27,000. He did not tender notes of either Marks and Maltz, appellant or Getler, for $27,500, secured by mortgage. Bour informed them that there was no one there who knew anything about it and he declined to accept the tender. Neither appellee, Marks, Maltz, appellant nor Getler was present.

*Arkansas Valley Smelting Co.* v. *Belden Mining Co.* 127 U. S. 379, involved the question of the assignability of a contract where goods were to be sold upon credit, and it was there said: "At the present day, no doubt, an agreement to pay money or to deliver goods may be assigned by the person to whom the money is to be paid or the goods are to be delivered, if there is nothing in the terms of the contract, whether by requiring something to be afterwards done by him or by some other stipulation, which manifests the intention of the parties that it shall not be assignable. But everyone has a right to select and determine with whom

he will contract and cannot have another person thrust upon him without his consent. In the familiar phrase of Lord Denman, 'You have the right to the benefit you anticipate from the character, credit and substance of the party with whom you contract.' (*Humble* v. *Hunter,* 12 Q. B. 310, 317; *Winchester* v. *Howard,* 97 Mass. 303, 305; *Boston Ice Co.* v. *Potter,* 123 Mass. 28; *King* v. *Batterson,* 13 R. I. 117, 120; *Lansden* v. *McCarthy,* 45 Mo. 106.) The rule upon this subject, as applicable to the case at bar, is well expressed in a recent English treatise. 'Rights arising out of contract cannot be transferred if they are coupled with liabilities, or if they involve a relation of personal confidence such that the party whose agreement conferred those rights must have intended them to be exercised only by him in whom he actually confided.' (Pollock, Cont. 4th ed. 425.) * * * The defendant, therefore, could not be compelled to accept the liability of any other person or corporation as a substitute for the liability of those with whom it had contracted."

*Sims* v. *Cordele Ice Co.* 119 Ga. 597, also involved the right of the seller under a contract to extend credit only to the original purchaser under the contract, and it was held that a contract right which is coupled with liabilities cannot be transferred to a third party by one of the parties to the contract without the consent of the other, and that a vendor had the right to decide for himself to whom he would sell his property upon a credit and could not be forced to so sell it to anyone else.

While it has been repeatedly held that the vendee's assignee of a contract for the purchase of real estate, while it is executory and nothing remains to be done but to pay the purchase price or a balance thereof, may tender the same and on refusal by the vendor compel specific performance, yet it has never been held that the assignee of a vendee could, where a contract calls for notes of the vendee secured by mortgage as a part of the purchase price, compel

the vendor to accept the notes and mortgage of the assignee and make the assignee the personal debtor of the vendor without his consent. On the other hand, it has been held in *Hounchin* v. *Salyards,* 155 Iowa, 608, that the seller was entitled to a mortgage from the original purchaser and could not be compelled to accept a mortgage from the assignee, and that contracts whereby one party agrees to extend credit to the other cannot be arranged by such other so as to require it to be extended to the assignee. The evidence does not show that Marks and Maltz were willing to give their notes for the $27,500 balance of the purchase price, and as they are not parties hereto the court could not compel them to do so in this proceeding. Appellant was a mere dummy for Getler and his financial ability is not shown. According to the testimony of his brother, appellant at no time had $27,000 of his own available to close the transaction. The $27,000 tendered by the appellant's brother to Bour was Getler's money and was not given to appellant's brother until February, 1924. While Getler testifies that he always had the money, his financial condition is not shown by the record.

Where the specific performance of a contract is sought to be enforced in a court of chancery it is incumbent upon the complainant to show by evidence such a state of facts that equity and good conscience would require the court to grant the relief sought. Under the combination of circumstances shown by the evidence in this case the chancellor was justified in finding that equity and good conscience did not require a specific performance of the contract.

The decree of the circuit court is affirmed.

*Decree affirmed.*