A. KAMENJARIN, Plaintiff in Error, vs. J. M. WILLIAMS, Defendant in Error.

*Opinion filed October 22, 1927.*

1. SPECIFIC PERFORMANCE—*mere offer not amounting to contract of sale is unenforceable.* A written instrument signed only by the vendor and giving the party to whom it is addressed "exclusive sale" of the property described therein for a certain period, although it recites that it is in consideration of "the sum of one dollar, receipt acknowledged," which gives said party the right to purchase for himself and gives all the terms of a contract of sale, is not enforceable as such where the evidence shows that no consideration was paid and that the offer was, in fact, withdrawn before it was accepted.

2. SAME—*the complainant must show himself entitled to relief sought—agency.* In a suit for specific performance of a contract for a conveyance the complainant must show by the evidence such a state of facts as in equity and good conscience entitles him to a deed, and the mere fact that the complainant may show a breach of an agency contract giving the complainant "exclusive sale" of the property, is not, of itself, sufficient to authorize a decree compelling the defendant to execute a deed to a proposed purchaser who is not seeking relief.

WRIT OF ERROR to the Superior Court of Cook county; the Hon. DENIS E. SULLIVAN, Judge, presiding.

WILLIAM CULLEN BURNS, for plaintiff in error.

BULKLEY, MORE, POYNTON & OVERMYER, for defendant in error.

Mr. JUSTICE STONE delivered the opinion of the court:

Plaintiff in error, A. Kamenjarin, filed a bill for specific performance against Judson M. Williams and Lizzie A. Williams, his wife, to compel the conveyance of certain property hereinafter referred to. The cause was referred to the master in chancery and evidence was taken. The master recommended in his report that the bill of com-

plaint be dismissed for want of equity. Exceptions to the
report were overruled by the chancellor and a decree in ac-
cordance with the recommendation of the master was en-
tered. Plaintiff in error brings the cause here for review.

During the pendency of the cause, and after the taking
of evidence, Lizzie A. Williams died. As the property in
question was held by Judson M. and Lizzie A. Williams in
joint tenancy, the former appears as the sole defendant in
error.

It appears from the evidence taken before the master
in chancery that on March 18, 1924, defendant in error
and his wife, at the instance and request of plaintiff in er-
ror, entered into the following contract:

"EXCLUSIVE SALES CONTRACT B

*A. Kamenjarin.*                        Date March 18, 1924.

"*Dear Sir*—In consideration of the sum of one dollar, receipt
acknowledged, I hereby give you exclusive sale of my property,
described as #3511 So. Wells St.

"Subject of lease covering basement to Nov. 1-24, at rental
of $25 per month for a period of 15 days from this date, at a price
of $6000. No commission subject to cash $3000, mortgage $3000,
bearing interest at 6 per cent, due in 5 years or any less sum which
I shall agree to accept, you to have the privilege of purchasing
this property during said period, if you so desire. Title to be taken
in your name or in the name of anyone you may designate. I
agree to furnish at my expense, abstract of title showing a mer-
chantable title in me and brought down to date of sale. All taxes,
special assessments and general expenses on property to be pro-
rated to date of delivery of deed.

"In consideration of having given you this exclusive contract,
it is understood that you are to advertise and show property with-
out any expense to me.        J. M. WILLIAMS,
                             LIZZIE A. WILLIAMS."

This contract was not signed by plaintiff in error and
the consideration of one dollar named therein was not paid.
While plaintiff in error testified that he offered to pay it
and that such offer was declined, this is denied by defend-
ant in error, and the evidence does not show, by a pre-
ponderance thereof, that such offer was made. It appears

from the evidence, also, that on the day before the execution of the contract plaintiff in error had had a conversation with Liberato Paradiso, in which the latter agreed to purchase the property for $6500, with the payment of $2000 in cash, a $3000 first mortgage and a $1500 second mortgage, and to lease the basement of the premises to defendant in error until November 1 of that year at a rental of $25 per month. Defendant in error was at that time conducting a printing shop in the basement of the premises.

It appears that when the contract was executed plaintiff in error did not disclose to defendant in error and his wife that Paradiso had agreed to purchase the place at $6500 on the terms referred to, but in conversation with them prior to the execution of the contract told them that he thought the property was worth about $6000, aside from his commission, which would be the regular broker's commission as fixed by the Cook County Real Estate Board. This, he testified on the hearing, would amount to $240.

Defendant in error testified that in conversation with plaintiff in error at the time of the execution of the exclusive sales contract it was understood between him and plaintiff in error that he and his wife were to be allowed to retain their home in the premises until such time as they could find another place of residence. This, however, does not appear in the contract. Within a few hours after plaintiff in error secured the contract he procured a written contract from Paradiso on the terms mentioned in their conversation of March 17 and took it to Williams, with the request that he and his wife sign it. Finding the contract was on different terms from that embodied in the sales contract Williams refused to enter into it. A few days later plaintiff in error called again with the contract and endeavored to induce Williams and his wife to sign it, but Williams told him that he would have nothing further to do with the matter without consultation with his attorney. Thereafter the parties met at the office of the attor-

ney for defendant in error and the contract was discussed. Defendant in error objected to the second mortgage, and plaintiff in error proposed that he take the second mortgage off his hands at $1000 and apply the other $500 on his commission. This appears not to have been satisfactory to defendant in error, and his counsel suggested that he would prepare a contract in accordance with plaintiff in error's proposition and send it to defendant in error. He testified that he suggested this in order that defendant in error might have time to think over the proposition. This contract was never entered into, and plaintiff in error testified that a few days thereafter he went to see Williams, who told him that he had changed his mind and would not sell the property. Aside from other attempts on the part of plaintiff in error to secure an acceptance by Williams of the Paradiso contract, nothing further appears to have been done about the sale of the property until April 1, the last day of the term for which the contract was to run. On that day plaintiff in error and Peter Maros and Lawrence Pervin, who appeared as witnesses for plaintiff in error on the hearing, appeared at the home of defendant in error and demanded that he and his wife sign papers to sell their property, stating that he had $3000 in cash to pay them. While plaintiff in error testified that he stated to them that he was selling the property to Mike Jelovich, he is not corroborated by the testimony of his two witnesses that any such explanation was made. Both Williams and his wife testified positively that no explanation was made as to who was to take the property. Williams told plaintiff in error the property was not for sale and Mrs. Williams ordered plaintiff in error out of the house. Williams, his wife and Lucille Larsh testified that plaintiff in error acted in a loud and boisterous manner, waving the papers over his head and demanding that Williams and his wife sign them. It appears that the documents which plaintiff in error had in his possession at that time were a deed

of the property to Jelovich, a trust deed of Jelovich for $3000, a note with interest coupons for that amount, and $3000 in gold certificates. Plaintiff in error testified that he told them on that occasion that if they preferred he would take the property in his own name. He contends here that his appearance and demand, with the $3000 and the necessary papers, at that time constituted a fulfillment of his part of the contract and that defendant in error and his wife were bound to execute the deed which he there presented. It does not appear by a preponderance of the evidence that he explained that the deed was not to be executed to Paradiso or that the contract was different from what he had previously endeavored to have them carry out.

Defendant in error contends that the contract signed by him and his wife lacked mutuality, and was one which, under the circumstances of the case, ought not in good conscience to be enforced. Counsel for plaintiff in error contends that this was both an option contract and one of agency for the sale of the property. As to the option feature of the contract, it appears that plaintiff in error at no time made demand to have the property transferred to him as purchaser. The documents which he carried with him were for transfer of the property to Jelovich. He does not aver in his bill that Jelovich was to take the property for him. There was therefore no exercise of the option on the part of plaintiff in error at any time during the life thereof. The fact that the contract provided that the vendor would deed to anyone designated by plaintiff in error does not give the latter the right to specific performance to himself or Jelovich, as prayed in the bill. He does not aver or claim that Jelovich was to take the property for him. Moreover, we are of the opinion that the contract, aside from the option feature to plaintiff in error, was an agency contract, in which plaintiff in error had no other interest than payment for his services. Since the consideration of one dollar mentioned in the contract was not

paid, the contract, in either feature, amounted to a continuing offer of sale during the period for which it was made, subject to being withdrawn before acceptance. The contract not being signed by plaintiff in error and the consideration not being paid was not complete without acceptance, and so long as it remained open it imposed no obligation upon either party, but if accepted before it was withdrawn would thereby become a binding contract. (*Threlkeld* v. *Inglett,* 289 Ill. 90; *Carter* v. *Love,* 206 id. 310.) Plaintiff in error's testimony shows that Williams told him, soon after the Paradiso offer, that he would not sell the property. This amounted to a withdrawal of the offer. Assuming that the contract of agency was binding,—which is not conceded,—and plaintiff in error had within the fifteen days presented a purchaser ready, willing and able to buy, defendant in error's refusal to sell amounted to no more than a basis for a claim at law for services. Certainly, such a situation cannot be made the basis of a decree for specific performance at the prayer of plaintiff in error. Jelovich, the proposed purchaser, is not seeking any relief but disclaims any interest in the property. The rule is, that where specific performance of a contract is sought to be enforced in a court of equity it is incumbent upon the complainant to show by the evidence such a state of facts as in equity and good conscience entitles him to a decree for the relief sought. (*Harney* v. *Hellgren,* 322 Ill. 126.) Plaintiff in error seeks specific performance of a supposed contract to sell to Jelovich, which relief Jelovich is not asking.

The facts of this case fall far short of those entitling plaintiff in error to specific performance, and the chancellor did not err in dismissing the bill for want of equity. The decree will therefore be affirmed.

*Decree affirmed.*