175 P.2d 196

**POLHAMUS et al. v. ROBERTS.**

No. 4977.

*Supreme Court of New Mexico.*

Nov. 23, 1946.

Rehearing Denied Dec. 31, 1946.

Reese & Reese, of Roswell, for appellant.

Frazier & Quantius, of Roswell, for appellees.

BRICE, Justice.

This action in ejectment was instituted by plaintiffs (appellees) to recover from defendant possession of certain real estate situated in Roswell, New Mexico, and to

recover damages for its retention. Defendant claims the right to possession under an alleged lease from plaintiffs. From a judgment for plaintiffs defendant has prosecuted this appeal.

The facts necessary to a decision are substantially as follows:

The property in question is owned one-half by the plaintiff, Birdie Polhamus, and the other one-half by plaintiffs Norma Jane Savage and Martha Lee Savage, who are minors and plaintiff's wards.

The defendant had been in possession of the building and operating a saloon therein under a lease from plaintiffs since 1941, paying monthly rental in advance. On or about January 15, 1945 he entered into an agreement to sell his saloon to J. A. Terry and Rulon Moody for $14,500 to be effective if the proposed purchasers could secure a lease of the real property in suit for a period of two years. The plaintiffs lived in Eureka, Kansas, and the defendant in Roswell, New Mexico.

On January 13, 1945 the defendant sent the following telegram to plaintiff:

"I have a chance to sell to two good men. They would like a two year lease or assurance of keeping the location. I am sick and have to sell my place. Please wire immediately."

On the 15th day of January, 1945, the plaintiff replied to the telegram as follows:

"Will give two year lease on premises you occupy at $175 monthly. I am also ill and contemplate sale of the building as soon as possible. If you want lease please advise."

The telegram was received by defendant on the same day; and upon its receipt Terry and Moody paid him $7500 as part of the purchase price of the saloon, and were let into possession of the property.

Late in the afternoon of January 16, 1945, the defendant deposited in the United States Post Office at Roswell, postage prepaid, an air mail letter in answer to plaintiff's telegram, as follows:

"Received your wire dated January 15, 1945, agreeing to lease me the Green Lantern for two years at $175 per month. I accept the lease proposition but as I wrote you before I am assigning all of my lease rights to the parties to whom I sold the bar, a Mr. J. A. Terry and Mr. Rulon Moody, and they desire to have a written lease from you, and consequently I have had a lease drawn up between you and Terry and Moody leasing this property for a term of two years.

"They have signed the lease in duplicate and when you sign the same it will be complete. You can keep one copy and mail the other copy back to me for the purchasers.

"I am also enclosing check of Moody and Terry for $175 for the first month's rent beginning January 20, 1945.

"I am sure these parties I am selling to will keep all rental paid promptly each month and will take good care of the premises.

"If the lease is not satisfactory you can draw a new lease and send it down, but I think the lease is okey.

"Trusting I may hear from you by return mail returning the signed copy of the lease, and with best regards, I am, Etc."

A proposed lease to Terry and Moody, to be executed by plaintiff, with Terry's check for $175, was enclosed in the letter, which was received by plaintiff on the 19th day of January 1945.

On the 18th day of January 1945, and prior to the receipt of defendant's letter, plaintiff telegraphed the defendant as follows:

"Please disregard my wire of January 15 regarding lease. Believe building has been sold and will advise you of new owner as soon as possible."

The proposed lease sent to the plaintiff by defendant, and J. A. Terry's check for $175 for one month's rent, enclosed therewith, were returned to the defendant and the offer to lease the property was rejected. The contemplated sale mentioned in plaintiff's telegram was not consummated. The plaintiff on May 28, 1945, leased the building to another for a period of ten years from that date, at $250 per month.

The defendant was duly served with notice to vacate and of the termination of tenancy to be effective July 23, 1945. In answer defendant offered to pay rent at $175 per month from January 20, 1945, to that date, upon condition that plaintiff should recognize a two year lease in defendant, which tender was rejected.

The defendant paid no rent after January 20, 1945, and the court determined that the rental value of the property was $200 per month; that the plaintiff was entitled to recover possession of the property, together with $135 per month from January 22, 1945 until July 23, 1945, and $200 per month thereafter until the premises should be yielded to plaintiff.

Terry and Moody do not claim, and never have claimed, any lease on the premises. Upon their demand the defendant returned to them the $7500 which they had paid on the purchase price of the saloon, the reasonable market value of which in the meantime had depreciated $8000.

The trial court concluded from the foregoing facts, as follows:

"That the defendant having initiated the negotiations by telegraph and Birdie Polhamus having answered by wire offering a two-year lease at $175 per month and stating 'If you want lease please advise,' and the defendant having elected to answer by mail, Birdie Polhamus was within her

rights in withdrawing her offer prior to the receipt of the defendant's letter.

"That no lease contract * * * and no contract to lease * * * resulted from the telegrams and correspondence, and that no lease resulted from such negotiations.

"* * * The defendant having failed to accept the counter offer made by Birdie Polhamus by telegram, and Birdie Polhamus having revoked such offer prior to the receipt of the letter, the defendant is without standing to assert that he has a lease on the property."

The question is whether the telegrams and letter we have copied herein constituted a lease contract between the parties.

The defendant's telegram of January 13 was an inquiry as to whether the plaintiff would lease her property to two unnamed persons to whom he "had a chance" to sell his saloon. He did not contemplate leasing the property himself.

The plaintiff's answer was an offer to lease the property at $175 per month, but the lessee was not named. It would ordinarily be assumed that her offer to lease the property was tendered to the unnamed persons mentioned in defendant's telegram, notwithstanding after the offer she added, "If you want lease please advise." It was defendant who applied for the unnamed persons and the reply was properly addressed to him. But the parties and the trial court have construed the language as an offer to defendant, and we will accept their construction.

■ It is the rule that an offer to enter into a bilateral contract must be accepted unconditionally and unqualifiedly by the offeree, and substantially as made, to constitute the negotiations a contract. Iselin v. United States, 271 U.S. 136, 46 S.Ct. 458, 70 L.Ed. 872; Minneapolis, Etc., R. Co. v. Columbus Rolling-Mill Co., 119 U.S. 149, 7 S.Ct. 168, 30 L.Ed. 376; United States v. Mitchell, 8 Cir., 104 F.2d 343; Canton Cotton Mills v. S. W. Overall Co., 8 Cir., 8 F.2d 807; Marshall Mfg. Co. v. Berrien County Package Co., 269 Mich. 337, 257 N.W. 714; Southern Real Estate & Finance Co. v. Park Drug Co., 344 Mo. 397, 126 S.W.2d 1169; 1 Williston on Contracts, Secs. 70, 72 and 73.

"A reply to an offer *though purporting to accept it,* which adds qualifications or requires performance of conditions is not an acceptance but is a counter offer." (Our emphasis) Restatement of Law of Contracts, Sec. 60.

Also see 12 A.J. "Contracts" Sec. 53; 17 C.J.S., Contracts, § 43.

"An offeror is entitled to know in clear terms whether the offeree accepts his proposal. It is not enough that the words of a reply justify a probable inference of assent." Restatement of Law of Contracts, Sec. 58.

The defendant's letter was not an unconditional and unqualified acceptance of plaintiff's offer. It required the performance of terms not included in the offer. If the acceptance had concluded with the words, "I accept your lease proposition" then it would have been unconditional and unqualified. But defendant added the condition that a written lease be made to third persons to whom he was assigning his "lease rights." At that time no rights had accrued to him by virtue of the telegrams exchanged.

The offer called for no formal written lease. Defendant stated in his letter transmitting a proposed lease for plaintiff to sign, "If the lease is not satisfactory, you can draw a new lease," which implied that a written lease was required; not to defendant, but to persons to whom plaintiff had never made an offer.

"An offer can be accepted only by the offeree. To constitute a valid contract, the minds of the parties must have met on the identity of the persons with whom they are dealing. Everyone has a right to select and determine with whom he will contract and another cannot be thrust upon him without his consent. It is immaterial whether the offerer had special reasons for contracting with the offeree rather than with someone else. * * *." 12 A.J., Contracts, Sec. 38.

"One of the necessary terms of any proposed contract is the person with whom the contract is to be made. Accordingly an offer made to one person cannot be accepted by another, even though the offeree purports to assign it. * * *." 1 Williston on Contracts, Sec. 80.

██ If the defendant had accepted the lease unconditionally and unqualifiedly and requested as a favor that it be made to Moody and Terry because of the circumstances stated in the letter, making it plain that it was not a condition, but a request to be complied with or not at plaintiff's option, then, assuming that the time and manner of acceptance was authorized, the defendant's contention would be correct. 1 Williston on Contracts, Sec. 79.

We are of the opinion that plaintiff's offer as made was not accepted, and that no contract resulted from their correspondence. See 1 Williston on Contracts, Sec. 77 and cases cited thereunder.

The plaintiff telegraphed her offer to defendant two days after she received his telegram, stating "If you want the lease please advise." She did not limit the time, or prescribe the medium of acceptance.

The trial court concluded that as the offer was transmitted by a telegram, that an acceptance by letter could not become effective by depositing the letter in the United States mail for transmission; but only upon its receipt by plaintiff before a revocation of the offer.

There is authority so holding. The case of Lucas v. Western Union Telegraph Co., 131 Iowa 669, 109 N.W. 191, 6 L.R.A.,N.S., 1016, seems to support the theory of the trial court. In that case the question was whether an offer sent by mail and accepted by telegraph completed a contract upon the filing of the telegram for transmission. The court held that the offerer by depositing his letter in the post office selected a common agency through which to conduct the negotiations and the delivery of a letter of acceptance to that agency (the post office) was in effect a delivery to the offerer. The Lucas case is supported by Dickey v. Hurd et al., 1 Cir., 33 F.2d 415.

But we are of the opinion that the following text states the correct and majority rule on the question:

"The reason given in modern cases for the doctrine that a contract may be completed by mailing a letter of acceptance, or by dispatching a telegraphic acceptance, is that the use of the post office or telegraph company has been authorized or indicated by the offeror as the means of communication, and that the acceptor is complying with a request made to him or authority given to him by the offeror in sending his acceptance in that way. If the offeror himself sends his offer by mail, this of itself implies authority to answer by the same channel of communication. Similarly, if an offer is sent by telegraph, author-ity to reply by the same means will be implied. If an offer is made in person, but is left open for subsequent acceptance, and the parties reside at a distance, so that no subsequent personal meeting is apparently contemplated, an acceptance by mail would be authorized; and similar principles would govern the use of the telegraph. Where the offeror has not himself made use of the medium of communication, adopted by the offeree, the question whether the means adopted was authorized is one of fact, depending upon what would reasonably be expected by one in the position of the contracting parties, in view of prevailing business usages, and other surrounding circumstances." 1 Williston on Contracts, Sec. 83.

The plaintiff did not use the medium of communication adopted by the defendant. The question therefore, whether the means adopted by defendant was authorized, is one of fact, depending upon what would reasonably be expected by persons in the position of the contracting parties, in view of prevailing business usages and other surrounding circumstances. As otherwise stated in Shubert Theatrical Co. v. Rath, 2 Cir., 271 F. 827, 834, 20 A.L.R. 846:

"Authorization to communicate acceptance by mail is implied in two cases: (1) Where the post is used to make the offer and says nothing as to how the answer is to

be sent. (2) Where the circumstances are such that it must have been within the contemplation of the parties that according to the ordinary usages of mankind the post might be used as a means of communicating the acceptance."

Also see the following cases regarding this question: Tayloe v. Merchants' Fire Ins. Co., 9 How. 390, 13 L.Ed. 187; Caldwell v. Cline, 109 W.Va. 553, 156 S.E. 55, 72 A.L.R. 1211; Farmers Produce Co. v. McAlester Storage & Commission Co., 48 Okl. 488, 150 P. 483, L.R.A.1916A, 1297; Farmers Equity Co-op. Creamery Ass'n v. United States, 10 Cir., 132 F.2d 738; Painter v. Brainard-Cedar Realty Co., 29 Ohio App. 123, 163 N.E. 57; Burton v. United States, 202 U.S. 344, 26 S.Ct. 688, 50 L.Ed. 1057, 6 Ann.Cas. 362; Restatement of Law Contracts, Sec. 66.

But as the plaintiff's offer was not accepted the erroneous conclusion of the trial court on this question, if error it was, does not affect the result.

The judgment of the district court is affirmed, and it is so ordered.

SADLER, C. J., and BICKLEY, LUJAN, and HUDSPETH, JJ., concur.