418 P.2d 187

Frank TATSCH, Plaintiff-Appellee,

v.

HAMILTON–ERICKSON MANUFACTURING COMPANY, a corporation, and John Barnes & Associates, Inc., a corporation, Defendants-Appellants.

No. 7799.

Supreme Court of New Mexico.

Sept. 19, 1966.

Nordhaus & Moses, Fred Trechel, Albuquerque, for appellants.

J. Wayne Woodbury, Silver City, for appellee.

## OPINION

NOBLE, Justice.

Frank Tatsch (plaintiff-appellee), a general contractor and the successful bidder for construction of a junior high school at Bayard, New Mexico, recovered damages against Hamilton-Erickson Manufacturing Company (hereafter termed Hamilton) and John Barnes & Associates, Inc. (hereafter termed Barnes), its agent, for breach of contract in failing to furnish certain equipment needed in the school building. This appeal followed.

The plans and specifications required Tatsch to install twelve tables with benches and pockets, "as manufactured by Schieber Mfg. Co., Detroit 39, Mich. * * *" (Specifications § 15-6). In response to an invitation to bid, Hamilton, by telegram of March 19, 1963, offered "ten (10) folding tables and benches as above specification section 15-6 for $3,470.00." Hamilton also offered by the same telegram "folding tables with benches specification section 15-3 standard Hamilton-Erickson products * * *" for an elementary school building.

The trial court determined that Hamilton had agreed to furnish twelve tables to comply with the architect's specifications, but breached its contract by failing to supply them to Tatsch. While four points are asserted and relied upon attacking certain findings and the refusal to adopt other tendered findings, this appeal turns upon whether there was a binding contract between the parties by which Hamilton agreed to furnish the equipment specified by the architect.

It is not clear upon just what basis the trial court determined that a binding contract existed between the parties. The court made the following pertinent findings, challenged by Hamilton:

"6. That it was the intention of the parties hereto on March 17 [sic 19], 1963, and later in May, 1963, to enter into a contract to be binding between the parties for the furnishing of said tables and benches in accordance with Section 1506 [sic 15–6] of the specifications.

"8. That there was a bona fide offer by defendants herein to furnish twelve tables and benches in accordance with Section 1506 [sic 15–6] of the above mentioned plans and specifications for the erection of a high school building by the Board of Education of the Cobre Consolidated School District of Bayard, New Mexico, and an acceptance by plaintiff herein.

"24. That the purchase order of May 7, 1963, is a full and complete contract, duly entered into by the parties hereto."

If there was a contract concerning the furnishing of the tables, it must have arisen out of an acceptance by Tatsch of the Hamilton offer.

The evidence concerning the offer and claimed acceptance consists of documentary evidence and the testimony of Frank Tatsch respecting a telephone conversation with Barnes. The evidence in this regard is entirely uncontroverted so that the question of whether a binding contract resulted is one of law.

Tatsch testified that Barnes talked to him by telephone on the day following the school-bid opening, congratulated him on being the low bidder and inquired concerning his supply bids. Tatsch told Barnes he was low on the tables, to which Barnes answered that he was not sure that the Hamilton-Erickson tables would meet the architect's specifications since the offer was to supply standard Hamilton-Erickson tables—not those as manufactured by Schieber Manufacturing Company. Barnes then suggested that Tatsch could talk the architect into accepting the standard Hamilton-Erickson tables. Tatsch replied that he did not do business that way and would "expect him to furnish a product that would be acceptable to the architect."

It is clear that there was no acceptance of the telegraphic offer prior to the telephone conversation which amounted to a withdrawal by Hamilton, if in fact the telegraphic offer was to supply tables meeting the architect's specifications. Barnes clearly explained the exact meaning and intent of the offer as one to supply a product different from that specified but which he hoped the architect would accept. Tatsch's reliance upon the telegraphic offer in preparing his prime con-

struction bid, even if he believed it to be an offer to supply the tables specified by the architect, did not amount to an acceptance nor does such offer so relied upon constitute a promissory estoppel. James Baird Co. v. Gimbel Bros., 64 F.2d 344 (2d Cir.1933).

■ A binding contract would result between the parties here only if Tatsch unconditionally accepted Hamilton's offer before it was withdrawn. Polhamus v. Roberts, 50 N.M. 236, 175 P.2d 196, 170 A.L.R. 991. The Supreme Court of Utah in R. J. Daum Const. Co. v. Child, 122 Utah 194, 247 P.2d 817, succinctly stated the means by which such an acceptance must be made manifest, thusly:

> " * * * Such an acceptance requires manifestation of unconditional agreement to all of the terms of the offer and an intention to be bound thereby. Such manifestation may be either written or oral or by actions and conduct or a combination thereof, but regardless of the form or means used, there must be made manifest a definite intention to accept the offer and every part thereof and be presently bound thereby without material reservations or conditions. * * *"

See, also, the cases there cited and the quotation from Restatement, Contracts, § 26; 1 Williston on Contracts, 3d Ed., § 72.

■ An acceptance must be clear, positive and unambiguous. Polhamus v. Roberts, supra. See 1 Williston on Contracts, 3d Ed., § 72. There was not such an acceptance here. At the very outset of the conversation, Barnes made it clear that the Hamilton offer was not to furnish tables meeting the specifications but only to supply the standard Hamilton-Erickson product, and that it was hoped the architect could be persuaded to accept the substitute. The final statement by Tatsch that he expected Hamilton to supply tables acceptable to the architect was clearly not an unconditional acceptance either of the telegraphic offer or of Barnes' expression of his interpretation of the offer. Here, both the wording of the offer and the following oral explanation make it apparent that the formation of a contract depended upon the existence of mutual assent in fact in the minds of the contracting parties, so that a change of mind on the part of either one which is communicated to the other would prevent the formation of a contract. 1 Williston on Contracts, 3d Ed., § 56 and § 22. The effect is the same where one of the parties explains his intention respecting the offer before an unconditional acceptance.

■■ Construing the conversation most favorably to Tatsch, it only evinces an intention by Hamilton to furnish its standard tables and an intention by Tatsch to accept those tables if they were approved

by the architect. The fact that an acceptance was to become effective only upon the happening of a condition does not prevent a binding contract from coming into effect upon the happening of that condition if that was the manifested intention of the parties. Frederick Raff Co. v. Murphy, 110 Conn. 234, 147 A. 709. The evidence, however, fails to show a manifestation of an intention to accept the Hamilton offer.

Neither Tatsch's written purchase order, nor the purchase order and the conditional acceptance by Hamilton show more than an agreement to furnish the standard Hamilton-Erickson product if the architect would accept it as a substitute for the tables as specified. The parties agree that the architect refused any modification of his specifications.

The written purchase order was to:

"FURNISH THE FOLLOWING, AS PER PLANS AND SPECIFICATIONS AND ACCORDING TO TELEGRAPHIC QUOTE OF JOHN BARNES CO. DATED MARCH 19, 1963:

"Hamilton-Erickson Products in compliance with Section 15–6 of specifications;
* * *

"Submittals required at once."

Hamilton's letter returning the purchase order contained the following:

"In accepting this contract we would like to remind you that the equipment to be furnished, will be as bid, that is, standard Hamilton-Erickson specifications."

Copies of shop drawings of the Hamilton-Erickson tables were enclosed with the request for the architect's approval.

■ An offer not under seal or given for a consideration may be withdrawn at any time prior to an unconditional acceptance by the offeree. 1 Williston on Contracts, 3d Ed., § 55. And, any statement clearly implying an unwillingness to contract according to the terms of the offer, communicated to the offeree prior to an unequivocal and unconditional acceptance of the offer is sufficient even though the word "revoke" is not used. Kamenjarin v. Williams, 327 Ill. 261, 158 N. E. 568. Thus, even if the Hamilton telegram be construed as an offer to supply the tables specified by the architect, any such offer was withdrawn by the telephone conversation the morning following opening of the bids and before there had been an acceptance of the telegraphic offer.

It follows that the judgment appealed from must be reversed and the cause remanded with instructions to vacate the judgment and proceed in a manner not inconsistent with the views expressed in this opinion.

It is so ordered.

CHAVEZ and MOISE, JJ., concur.