The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: April 27, 2023

**No. A-1-CA-39429**

**WHITE SANDS CONSTRUCTION, INC.,
a New Mexico corporation,**

Plaintiff-Appellee,

v.

**CITY OF LAS CRUCES, a New Mexico
home rule municipality,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY
Marci E. Beyer, District Court Judge**

Jackson Loman Stanford Downey & Stevens-Block, P.C.
Leah M. Stevens-Block
Kara Shair-Rosenfield
Albuquerque, NM

for Appellee

Martin & Lutz, P.C.
David P. Lutz
Las Cruces, NM

for Appellant

**OPINION**

**WRAY, Judge.**

{1}     This appeal involves contract interpretation in the context of the Prompt Payment Act (PPA), *see* NMSA 1978, §§57-28-1 to -11 (2001, as amended through 2007). Under the PPA, with few exceptions, "all construction contracts shall provide that payment for amounts due shall be paid within twenty-one days after" receipt of an undisputed application for payment. Section 57-28-5(A). If prompt payment is not made as required, an interest penalty begins to accrue "on the twenty-second day after payment was due," which is "computed at one and one-half percent of the undisputed amount per month or fraction of a month." *Id.* The statutory penalty in Section 57-28-5(A) continues "until the payment is issued."

{2}     Defendant the City of Las Cruces (the City) appeals from the district court's decision following a bench trial, which concluded that the City owed Plaintiff White Sands Construction, Inc. (White Sands) $160,379.51 under the PPA, arising from the City's late payments to White Sands on a construction contract. The City argues to this Court that White Sands waived its right to interest under the PPA and in the alternative, that the district court miscalculated the amount of interest owed based on an incorrect reading of the PPA and the parties' agreements. We affirm in part, reverse in part, and remand for further proceedings.

**BACKGROUND**

{3}    In 2015, the City entered into a $10,000,000 contract (the Contract) with White Sands to perform site development and to construct a Public Safety Complex (the Project), a 35,000 square foot fire station and police substation. The Contract involved three participants: the City as the "Owner," White Sands as the "Contractor," and an individual identified as the "Architect." The Contract required White Sands to submit applications for payment to the Architect, who would review and issue certificates for payment, and the City would make payments "not later than twenty-one (21) days after the Architect receive[d] the [a]pplication for [p]ayment." In the event that the Project's "substantial completion" date was delayed, White Sands would owe "liquidated damages" calculated at a daily rate.

{4}    The Project quickly ran into problems. The district court found that the Project was significantly late reaching substantial completion and that the City failed to make timely payments on twenty-three out of twenty-six of White Sands' payment applications. At trial, White Sands introduced evidence that the City's chronic late payments caused significant delays in construction, because White Sands needed the funds from the City to pay the subcontractors who were "threatening to pull off the job." The district court found that the City additionally directed White Sands to perform extra-contractual work throughout the Project and failed to adjust the payments accordingly, even though White Sands contemporaneously submitted

2

change order requests. The district court also found that "the City chose to wait until the end of the Project to settle the change orders in order to retain contract payments to cover" amounts owed by White Sands at the end of the Project to compensate the City for delayed completion (liquidated damages). By the time the Project neared completion, to resolve mutual dissatisfaction and to finalize the Project, the parties engaged in negotiations (the Negotiations).

{5}     As part of the Negotiations, White Sands offered to forgo interest under the PPA in return for the City abandoning any claim for liquidated damages. The City responded to White Sands' offer and informed White Sands, orally and in writing, that any PPA claim should be raised with the risk management division apart from the Negotiations. The parties entered into a settlement agreement and a final change order (Change Order No. 2). The parties' settlement agreement did not mention a PPA claim and only released White Sands—not the City—from liability. Change Order No. 2 includes as compensation for the City, a "Credit for Additional Time extension beyond original substantial completion date," which represented the liquidated damages assessed against White Sands. The line item in which White Sands had proposed zeroing out the PPA claim, however, was crossed out by the City.

{6}     White Sands filed a complaint and alleged a violation of the PPA to recover statutory interest that had accrued on the City's late payments. At trial, the City

argued that White Sands had waived recovery under the PPA in the Negotiations. The parties also disputed the proper method for calculating any interest owed, including the event that triggered the interest to begin to accrue, whether interest accrued by the day or the month, and the date that interest stopped accruing. Following the bench trial, the district court emailed the parties with its decision and reasoning. The district court determined that White Sands had not waived PPA interest, which the City owed to White Sands. Moving on to the "[p]roper method of calculation of interest," the district court concluded that interest began to accrue twenty-two days after White Sands submitted a payment application to the Architect, the City owed a full month of interest on the first day of each month that a payment was overdue, and PPA interest stopped accruing three days before White Sands received payments from the City. The district court later entered a written order holding that under the PPA, the City owed White Sands $160,379.57 in interest and reasonable attorney fees and costs. Between the district court's email ruling and the final written order, the City filed a "Motion for Clarification" related to the calculation of interest and whether the three days the district court subtracted to arrive at a payment date were calendar or business days. The district court denied the motion but confirmed at a hearing that the three days were calendar days. The City appeals.

4

**DISCUSSION**

{7} The City raises three arguments. First, the City contends that the district court incorrectly concluded that White Sands did not waive its right to pursue PPA interest by entering Change Order No. 2 and the settlement agreement. Second, the City asserts that the district court improperly determined how to apply the PPA's direction that interest accrued "per month or fraction of a month until the payment is issued" and when the interest started to accrue. Third, the City maintains that the district court incorrectly decided the City's motion for clarification, which was related to the calculation of the date the interest terminated. We first consider whether Change Order No. 2 and the settlement agreement resulted in a waiver of interest under the PPA.

**I.    White Sands' Offer to Waive Interest Under the PPA**

{8} The City maintains that White Sands waived interest under the PPA during the Negotiations. Specifically, the City argues that this question presents "a general matter" of a contractual offer, acceptance, and consideration. White Sands responds that the City rejected White Sands' offer to waive interest under the PPA both generally and as a term of Change Order No. 2. We review questions of contract interpretation de novo, *see Pub. Serv. Co. of N.M. v. Diamond D Const. Co.*, 2001-NMCA-082, ¶¶ 16, 48, 131 N.M. 100, 33 P.3d 651, and agree with White Sands.

{9}     "The essential attributes of a contract include an offer, an acceptance, consideration, and mutual assent." *Talbott v. Roswell Hosp. Corp.*, 2005-NMCA-109, ¶ 14, 138 N.M. 189, 118 P.3d 194. A proposal "is not effective and is not an 'offer' until it is made known to the other party, who is then in the position to accept or reject the offer." *Orcutt v. S & L Paint Contractors, Ltd.*, 1990-NMCA-036, ¶ 12, 109 N.M. 796, 791 P.2d 71. Sufficient acceptance "must be clear, positive and unambiguous" and may be made by "performance or by promise." *Id.* ¶¶ 12-13. The refusal to accept or a proposal to modify an offer constitutes a rejection of that offer. *See Gallup Westside Dev., LLC v. City of Gallup*, 2004-NMCA-010, ¶ 22, 135 N.M. 30, 84 P.3d 78; *Rejection*, *Black's Law Dictionary* (11th ed. 2019). Both sides to a contract must also provide bargained for consideration, which is a binding promise "to do something that a party is under no legal obligation to do or to forbear from doing something [they have] a legal right to do." *Talbott*, 2005-NMCA-109, ¶¶ 16, 19 (internal quotation marks and citation omitted). Consideration is "bargained for 'if it is sought by the promisor in exchange for [their] promise and is given by the promisee in exchange for that promise.'" *Romero v. Earl*, 1991-NMSC-042, ¶ 6, 111 N.M. 789, 810 P.2d 808 (internal quotation marks and citation omitted). The City argues that White Sands continually offered to waive interest and that Change Order No. 2 amounted to an acceptance of that offer because Change Order No. 2 was intended to resolve all of the parties' disputes. To the contrary, however, we agree

with the district court's conclusion that the parties did not agree that White Sands would forgo PPA interest either generally or as a term of Change Order No. 2.

{10}     White Sands repeatedly offered to waive interest under the PPA, and the City rejected those offers. The City explicitly declined to include the potential PPA claim as "part of the construction project closeout conversation at all" and instead informed White Sands that PPA interest was "a discussion for the City's risk department." White Sands again urged the City to accept the offer to waive the PPA claims, stating that the claims were "directly associated with our contract and law" and expressing confusion about "how this is a different department." White Sands' offers, even after the City's rejection, included a spreadsheet with a line reflecting the offer to waive PPA interest. In the final agreement spreadsheet, the City crossed out the line with "$0.00" that was associated with PPA interest. At trial, the City's witness confirmed that the City had rejected White Sands' offer to waive interest under the PPA. As a result, the City rejected and did not clearly, positively, and unambiguously accept any offer by White Sands to waive PPA claims. *See Orcutt*, 1990-NMCA-036, ¶ 12. Absent such "clear, positive, and unambiguous" acceptance, the parties reached no agreement about the payment of interest under the PPA. *See id.* ("The rule is that an offer becomes a binding promise and results in a contract only when it is accepted."). We therefore cannot conclude that proposing to waive interest and agreeing to Change Order No. 2 demonstrates any agreement or intent on White Sands' part to

7

waive interest under the PPA as part of Change Order No. 2. *See Tatsch v. Hamilton-Erickson Mfg. Co.*, 1966-NMSC-193, ¶¶ 9-12, 76 N.M. 729, 418 P.2d 187.

{11}     To the extent the City argues that Change Order No. 2 would lack sufficient consideration without White Sands' waiver of PPA interest, the City fails to account for the benefits both parties received under Change Order No. 2. The City frames Change Order No. 2 as follows: in exchange for White Sands waiving interest under the PPA, the City agreed that it would not label the contractual damages it assessed against White Sands as "liquidated damages" or instigate suspension or "disbarment" procedures against White Sands. The record reveals, however, that White Sands believed during the Negotiations that it was entitled to (1) compensation for advancing payments to subcontractors in light of the City's late payments, (2) payment for extra-contractual work ordered by the City, and (3) a significant extension of the contractual "substantial completion date" based on delays caused by the City. As the district court found, the City did not agree in Change Order No. 2 to give White Sands all of the requested compensation and extensions of time. In the settlement agreement and Change Order No. 2, White Sands was still required to pay some late-delivery fees, though the fee was not called "liquidated damages" as set forth in the contract,[1] and White Sands was prohibited

---

[1]According to the parties and district court, the term "liquidated damages" in this instance would carry a negative connotation that could be damaging to White Sands' reputation.

8

from bidding on City proposals for a year. Given White Sands' concessions and the benefits obtained by the City, we do not accept the City's argument that White Sands must also have waived interest under the PPA for the consideration to be mutual. *See Talbott*, 2005-NMCA-109, ¶ 16 (requiring "both sides" to have "provide[d] consideration").

{12}     As a result, we affirm the district court's conclusion that the Negotiations demonstrated "that Change Order [No.] 2 and the attached [s]ettlement [a]greement did not contemplate or address [PPA i]nterest." *See Melnick v. State Farm Mut. Auto. Ins. Co.*, 1988-NMSC-012, ¶¶ 17, 19, 106 N.M. 726, 749 P.2d 1105 (acknowledging this Court's obligation to enforce the bargained for terms of a contract and declining to rewrite a contract to favor a dissatisfied party). We turn next to the district court's calculation of interest owed under the PPA.

**II.     The Calculation of Interest Accrued Under the PPA**

{13}     The district court's findings of fact calculated the number of days that the City was late in paying and the amount of statutory interest owed under the PPA. The City contends that the district court incorrectly construed the calculation of interest under the PPA's "month or fraction of a month" language and erroneously determined the dates triggering the accrual of PPA interest. Interpretation of statutory language is a question of law, which we review de novo. *Diamond D Constr. Co.*, 2001-NMCA-082, ¶ 48. In that endeavor, our primary goal is to discern

9

the Legislature's intent and "give effect to the clear and unambiguous language of a statute." *Id.* Our approach to statutory interpretation depends on whether the language of the statute is ambiguous. Where the language is unambiguous, "we apply the statute as written." *N.M. Real Estate Comm'n v. Barger*, 2012-NMCA-081, ¶ 7, 284 P.3d 1112. Where, however, a statute is ambiguous, meaning that "reasonably informed persons can understand the statute as having two or more meanings," we turn to principles of statutory construction. *Diamond D Constr. Co.*, 2001-NMCA-082, ¶ 48 (internal quotation marks and citation omitted). We first address the unit of time for which interest is assessed under the PPA.

**A.      The District Court Improperly Calculated When Interest Began to Accrue**

{14}      The PPA states as follows:

> If the owner fails to pay the contractor within twenty-one days after receipt of an undisputed request for payment, the owner shall pay interest to the contractor beginning on the twenty-second day after payment was due, computed at one and one-half percent of the undisputed amount per *month or fraction of a month* until the payment is issued.

Section 57-28-5(A) (emphasis added). The City contends that in order to align with the purposes of the PPA, interest must accrue every day the owner is late at a daily rate that is proportionate to the monthly rate of one and one-half percent. According to White Sands, an owner is responsible for the interest assigned for an entire month

even if the payment is only late by a portion of that month,[2] so that an owner who is one day late is responsible for the entire one and one-half percent interest for that month. The parties' arguments reveal a statutory ambiguity. Section 57-28-5(A) identifies a single interest rate that accrues "per month or fraction of a month." The interest rate could apply to a "month or fraction of a month" as a single unit of time, as White Sands argues. Alternatively, the interest rate could apply at a monthly rate in a manner that can be fractionally divided within a month, as the City argues. We conclude that a reasonably informed person could understand the statute according to either interpretation.

{15}     Given the plain meaning of the words, the single interest rate more reasonably applies "per month or fraction of a month" as a single unit of time as White Sands contends. We will not, however, "allow a literal plain reading of a statute to

_____

[2]We note that White Sands  presented evidence before the district court and argued, in part, that its method for calculating the interest rate was an industry standard, but it appears to abandon this contention on appeal. We further observe that the City argues to this Court that White Sands inappropriately supported its position on legislative intent with a posttrial attorney affidavit attached to written closing arguments. To the extent that the City argues this affidavit improperly influenced the district court's ruling, the City did not move to strike or otherwise raise the issue in the district court and thereby failed to preserve the issue. *See* Rule 12-321 NMRA. The district court further did not reference an industry standard or the affidavit in its findings and conclusions, and we therefore discern no prejudice. *See Coates v. Wal-Mart Stores, Inc.*, 1999-NMSC-013, ¶ 37, 127 N.M. 47, 976 P.2d 999 ("The complaining party on appeal must show the erroneous admission and exclusion of evidence was prejudicial in order to obtain a reversal." (alteration, internal quotation marks, and citation omitted)).

confound the legislative intent." *State ex rel. Brandenburg v. Sanchez*, 2014-NMSC-022, ¶ 4, 329 P.3d 654. To that end, where an overly technical, "literal" reading of the statute contradicts the legislative intent, "the statute will be construed according to its obvious spirit or reason, even though this requires the rejection of words or the substitution of others." *Barger*, 2012-NMCA-081, ¶ 7 (internal quotation marks and citation omitted). The City's interpretation, which permits interest to accrue every day an owner is late at a daily rate that is proportionate to the monthly one-and-one-half percent rate, injects additional words into Section 57-28-5(A), but better serves the statute's "obvious spirit or reason." *Barger*, 2012-NMCA-081, ¶ 7.

{16}     The PPA both creates a penalty for late payment and encourages prompt payment. *See J.R. Hale Contracting Co. v. Union Pac. R.R.*, 2008-NMCA-037, ¶¶ 71, 80, 143 N.M. 574, 179 P.3d 579 (noting that a prior version of Section 57-28-5 provides for "an interest penalty" while also observing that interest may stop running if a party attempted to pay and the other party refused to accept); *Diamond D Constr. Co.*, 2001-NMCA-082, ¶¶ 51-65 (considering the spectrum of the Legislature's intent in order to determine how to apply the provisions of the prejudgment and postjudgment interest statutes); *GEA Integrated Cooling Tech. v. N.M. Tax'n & Revenue Dep't*, 2012-NMCA-010, ¶¶ 12-14, 268 P.3d 48 (construing a tax penalty to serve the dual legislative purposes of punishment and encouraging timely filing). White Sands' construction of the statute, which was adopted by the

district court, emphasizes the punitive nature of the PPA too heavily at the expense of its apparent principal purpose—to encourage prompt payment. *See* § 57-28-1 (providing the short title, "Prompt Payment Act"); *cf. Nash v. Bd. of Cnty. Comm'rs of Catron Cnty.*, 2021-NMSC-005, ¶ 32, 480 P.3d 842 (deriving legislative intent from the title of prior legislation). White Sands' proposed interpretation would hold liable an owner who is one day late for the same amount as an owner who is twenty-nine days late. Why, then, would an owner make a late payment on day two when the penalty is the same if the late payment is not sent until day twenty-eight? *See Diamond D Constr. Co.*, 2001-NMCA-082, ¶¶ 51-57 (construing the statutory interest provision according to its purpose). A daily rate of interest achieves both the Legislature's intent to impose a penalty and to have contractors paid timely or, if payment is untimely, to create an incentive to shorten the period of delay. To avoid circumventing the PPA's intent to encourage prompt payment, we conclude that interest under the PPA computes for the actual period of delinquency as the City argues—at a daily rate proportionate to the one-and-one-half percent statutory monthly rate.

**B.** **PPA Interest Began to Accrue Twenty-One Days After White Sands Submitted Payment Applications to the Architect**

{17} Next, the City contends that the statutory time began to accrue when the Architect approved the amount requested by White Sands and the City was in actual receipt of the application for payment. The PPA requires the owner to make payment

13

"within twenty-one days after the owner receives an undisputed request for payment," Section 57-28-5(A), and defines "owner" as "a person, local public body or state agency other than the department of transportation," Section 57-28-2(C). The City argues that (1) the payment applications were not "delivered" to the City as an "owner" under the PPA until after the Architect approved them; and (2) the payment applications were not an "undisputed request" under the PPA until the Architect authenticated and confirmed the requests. We first determine whether statutory interest began to run when the Architect received the payment applications from White Sands or when the City, as the owner, received them from the Architect.

{18}    Under the PPA, the "owner" is the party contracting for construction services. *See* §§ 57-28-2(C), -5(A). Our Supreme Court has long explained that a term like "owner" in a statute is not necessarily limited to "the holder of the legal title to the property improved." *Hill v. Long*, 1956-NMSC-066, ¶ 10, 61 N.M. 299, 299 P.2d 472 (considering whether a party dealt with an "owner" in order to determine whether the party was a contractor or a subcontractor (internal quotation marks and citation omitted)). Instead, the term may refer to "the party in interest who is the source of authority for the improvement." *Id.* (internal quotation marks and citation omitted). Because the PPA ties the amount of time to make a payment to the date that the "owner" receives an application for payment, we consider who had the authority to "receive[]" the application. *See* § 57-28-5(A).

{19} In the present case, the Architect was the "party in interest who [was] the source of authority" for payment. *See Hill*, 1956-NMSC-066, ¶10. According to the Contract, the time for payment began to run when the Architect received the payment application:

> Provided that an [a]pplication for [p]ayment is received by the Architect not later than the last day of a month, the Owner shall make payment of the certified amount to the Contractor not later than the twenty[-]first day of the following month. If an [a]pplication for [p]ayment is received by the Architect after the application date fixed above, payment shall be made by the Owner not later than twenty[-]one (21) days after the Architect receives the [a]pplication for [p]ayment.

The City suggests that because the interest is statutory, we should not look to the Contract. The City, however, relies on definitions of "owner," "architect," and "contractor" that are found in the Contract. "[I]t would make no sense," as the district court observed, "to allow a sloppy arrangement between the Owner and the Architect, regarding how the [a]pplications for [p]ayment were handled, to thwart the purposes of the [PPA]." To adopt the City's narrow construction of the term "owner" would undermine the statute's twenty-one day time for payment and permit owners to extend the time to pay and avoid penalty by delegating authority to review payment applications. Nothing suggests that the Legislature contemplated such a result. *See Baker v. Hedstrom*, 2013-NMSC-043, ¶ 15, 309 P.3d 1047 (explaining that if an "interpretation leads to absurdities, or if it conflicts with the Legislature's

15

purpose for enacting the [statute], then we cannot conclude that [the] interpretation reflects legislative intent").

{20} The City additionally argues that the time to pay should not have begun to run until the application was approved by the Architect because the payment application was disputed until that point. In this context, this Court has previously defined "undisputed" as "unchallenged, unquestioned." *See Unified Contractor, Inc. v. Albuquerque Hous. Auth.*, 2017-NMCA-060, ¶ 73, 400 P.3d 290. For a payment application to be disputed, an owner has an obligation to affirmatively raise questions or challenges to the application for payment. *See id.* (discussing the definition of "undisputed" under the PPA and holding that "raising a challenge or question as to an invoiced item limits a[n owner's] liability for statutory interest"). An owner raising such a challenge to an application for payment in a good faith dispute must "notify the [contractor] of the invoice within seven days of receipt in what way the invoice is improper[]." Section 57-28-5(A). From this we conclude that under the PPA, applications for payment are undisputed unless the contractor is notified of any issues with the invoice within seven days. Absent such notice, the owner must pay the contractor within twenty-one days of receipt or face a statutory penalty. *See id.*; *Unified Contractor, Inc.*, 2017-NMCA-060, ¶ 73. The City fails to direct this Court's attention to any attempt by the City or the Architect to dispute a submitted payment application, and as a result, all payments were undisputed and

due within twenty-one days of White Sands submitting an application for payment to the Architect.

### III. The City's "Motion for Clarification"

{21} The City last argues that the district court improperly determined, in response to the "Motion for Clarification," when the City's payments were "issued." Under the PPA, the date a payment is "issued" is the date that interest stops accruing on a late payment, and owners may make payment "by first-class mailing." Section 57-28-5(A). The district court found that the payments were issued three calendar days before White Sands received payment in the mail. Generally, "[w]e review the district court's findings of fact for substantial evidence, viewing the evidence in the light most favorable to support the district court's findings, resolving all conflicts, and indulging all permissible inferences in favor of the decision below." *Ulibarri v. Jesionowski*, 2023-NMCA-008, ¶ 30, 523 P.3d 624. In the present case, however, the issue was raised in the district court by the City's "Motion for Clarification," and we therefore consider the context for and nature for this motion in order to determine the appropriate standard for our review.

{22} At trial, the district court had to determine on which date payments were "issued" in order to properly calculate the PPA interest accrued. *See* Section 57-28-5(A). White Sands provided evidence to establish when payment was received but the City had no evidence to establish when payments were mailed. White Sands

argued that PPA interest should run until it received payment, and the City maintained that PPA interest should stop accruing according to the date the checks were signed even though the evidence demonstrated a delay between preparation of a check and forwarding that check to White Sands. In the initial email ruling, the district court concluded that the City mailed the checks—and thereby "issued" payment for PPA purposes—three days before White Sands received payment (three-day ruling). Soon afterward but before the district court could enter its written order, the City filed a "Motion for Clarification" and asked the district court to count the time in its three-day ruling according to Rule 1-006(A)(2) NMRA and exclude holidays and weekends. In the motion, the City recognized that its request would impact the district court's existing decision regarding untimely payments. While the district court ultimately entered an order denying the motion, at the hearing on the "Motion for Clarification," the district court clarified that the three-day period included holidays and weekends.

{23}    Despite framing the motion as a "Motion for Clarification," the City sought alteration and not clarification of the district court's existing view. The City advocated for the district court to use business, rather than calendar days, and to reject White Sands' calculation of the interest owed. *See In re Estates of Hayes*, 1998-NMCA-136, ¶ 16, 125 N.M. 820, 965 P.2d 939 (distinguishing a district court's correction of error from "changing its mind" (alteration, internal quotation

18

marks, and citation omitted)). For this reason, the "Motion for Clarification" was truly a request for the district court to reconsider or amend its previous ruling, and therefore akin to a motion to reconsider.

{24} Rulings on motions to reconsider are reviewed for abuse of discretion. *GCM, Inc. v. Kentucky Cent. Life Ins. Co.*, 1997-NMSC-052, ¶ 28, 124 N.M. 186, 947 P.2d 143. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case." *Kilgore v. Fuji Heavy Indus. Ltd.*, 2009-NMCA-078, ¶ 39, 146 N.M. 698, 213 P.3d 1127 (internal quotation marks and citation omitted). On appeal, the City does not contest the district court's original three-day ruling but instead disputes how the three days were counted: calendar versus business days. The City reiterates to this Court the argument it made to the district court and contends that the district court should have applied Rule 1-006(A)(2)[3] to determine that "a length of time of three (3) days would exclude intermediate Saturdays, Sundays, and legal holidays." The City's argument fails to account for the nature of the district court's ruling. Rule 1-006 "applies in computing any time period specified in [the rules of civil procedure for the district courts], in

---

[3]The City additionally argues that the district court was required to exclude weekends and legal holidays from its three-day ruling under NMSA 1978, Section 12-2A-7(E) (1997), but fails to indicate where this argument was preserved. We therefore decline to address Section 12-2A-7(E) but observe that the "Uniform Statute and Rule Construction Act" is just that—applicable to the construction of statutes and rules. *See* NMSA 1978, § 12-2A-1(B) (1997).

19

any local rule or court order, or in any statute, unless another Supreme Court rule of procedure contains time computation provisions that expressly supersede this rule." The district court was not construing a time period specified by rule or statute or even court order. Instead, the district court had to decide as a factual and historical matter, as a jury would, when the City issued payment.

{25}     The City argues that the district court's decision in this regard was "arbitrary," referencing statements by the district court at the hearing on the "Motion for Clarification." In addressing the City's request to use business days, the district court stated:

> White Sands kept records that seemed to be reliable, and because the
> City's testimony was they didn't have any idea, they didn't make any
> attempt to try to keep track of this, that I was going to make an arbitrary
> decision that . . . if you mailed something to Alamogordo, or El Paso,
> or somewhere, or from there to here, . . . it took about three days.

Later in the hearing, the district court again referred to arbitrariness in the context the City's lack of evidence about the date of mailing. The district court's phrasing reflects the City's failure to present adequate records regarding the date of mailing and not a decision without any reason, as the City suggests. Apart from Rule 1-006 and the unpreserved reference to Section 12-2A-7(E), the City provides no basis in law or fact for us to conclude that the district court's inference that the payments were mailed three calendar days, rather than business days, was unreasonable or "clearly against the logic and effect of the facts and circumstances of this case." *See*

20

*Kilgore*, 2009-NMCA-078, ¶ 39 (internal quotation marks and citation omitted). To the extent that the City challenges the evidence supporting the district court's determination that the payments were issued three calendar days before they were received, we conclude that the inference was reasonable based on the testimony at trial that White Sands received the payments from the City by mail, the absence of any evidence or argument from the City about when it actually mailed the checks, and the district court's asserted familiarity with mail delivery in the area. *See Durrell v. Miles*, 1949-NMSC-033, ¶ 17, 53 N.M. 264, 206 P.2d 547 (inferring the date of receipt from the date of mailing); *see generally Estrada v. Cuaron*, 1979-NMCA-079, ¶ 8, 93 N.M. 283, 599 P.2d 1080 ("The purpose of a trial of factual issues is to arrive at the truth, insofar as possible."); *cf. Schultz ex rel. Shultz v. Pojoaque Tribal Police Dep't*, 2010-NMSC-034, ¶ 23, 148 N.M. 692, 242 P.3d 259 (determining that a party "reasonably may rely on [their] own knowledge and experience, as well as the representations of the mail or courier service, regarding a document's expected date of arrival"). On the record before us, we are therefore unable to conclude that the district court's decision was arbitrary, unreasonable, or otherwise an abuse of discretion. Therefore, we affirm the denial of the City's motion as well as the evidentiary inference made by the district court.

**CONCLUSION**

{26}     We affirm the district court's decision that the City owed White Sands interest under the PPA that had accrued on delinquent payments as well as the dates such interest started and stopped accruing. We reverse as to the rate at which that interest accrued and remand for recalculation of the interest owed.

{27}     **IT IS SO ORDERED.**

_____
**KATHERINE A. WRAY, Judge**

**WE CONCUR:**

_____
**JACQUELINE R. MEDINA, Judge**

_____
**ZACHARY A. IVES, Judge**