PAINTER *v.* THE BRAINARD-CEDAR REALTY CO.

**124**

(Decided May 21, 1928.)

*Messrs. Tolles, Hogsett & Ginn,* for plaintiff.
*Mr. Frank T. Cullitan,* for defendant.

MAUCK, J. The plaintiff, Kenyon V. Painter, seeks specific performance of an alleged contract for the sale of real estate. The defendant corporation resists performance, claiming that the property referred to constitutes all the assets of the corporation, and that no authority was ever granted to the directors by the stockholders of the corporation to dispose of all its property,. as required by Section 8710 *et seq.,* General Code; that there was never any legal meeting of the directors or stockholders of the corporation, authorizing the contract of sale : and that no contract was in fact entered into by the parties.

The record shows that the plaintiff, through his agent, on June 30, 1926, proposed in writing to the defendant to purchase "the parcel of land owned by your company, situated in Orange township, Cuyahoga county, Ohio, at the southeast corner of Cedar road and Brainard road."

The proposed price was $100,000, $5,000 represented by a check accompanying the offer, "$45,000 when papers are ready before January 1, 1927," the

balance to be secured by mortgage. The offer was to remain open until noon on July 2, 1926. While the offer was under consideration, the terms thereof were changed at the instance of the defendant's executive officers, so that the whole remaining sum of $95,000 was to be paid when papers were ready for delivery. On the night of June 30, or the morning of July 1, there was written on the offer an acceptance thereof, and this acceptance was signed by the president and secretary of the defendant corporation, and the check for the $5,000 indorsed by them. On the forenoon of July 1, the secretary of the corporation advised plaintiff's agent by telephone that the offer had been accepted. Later in the same forenoon the acceptance was repudiated. Subsequently the signatures of the defendant's officers were clipped by them from the instrument, the indorsement on the check was erased and these instruments were then returned to the plaintiff's agent.

The first contention of the defendant is that the contract is not enforceable because the description therein is not sufficient. The defendant owned but one parcel of land at the place indicated, and indeed owned only one piece of real estate anywhere. There appears on the record no doubt on the part of any one as to the actual property referred to. There is no merit in the contention. 25 Ruling Case Law, 651.

It is further urged that there was no delivery of the accepted offer to the plaintiff, and that failure in this respect left the negotiations incomplete. It is not denied that the signature of the party sought to be charged was affixed to the con-

tract. Nothing more was required to satisfy the statute of frauds.

"The evil the statute seeks to guard against is the use of oral evidence to prove the contract. This is obviated by the production of the undelivered memorandum thereof. If produced from the defendant's own custody, it guards against mischief that the statute was passed to prevent, just as well as if produced from the custody of the plaintiff." 25 Ruling Case Law, 676.

That both parties must be bound or neither is bound is true; that the plaintiff was entitled to notice of the acceptance of his proposal before he became bound is equally true. The law, however, requires no particular form of notice of acceptance. The form of the acceptance is determined by the offer. 1 Williston on Contracts, Section 76. While the offeror in the instant case might have required that the offeree communicate his acceptance in writing, he did not do so. He, of course, required an acceptance within a prescribed time, but permitted notice of such acceptance to be communicated to him in any way that the offeree chose. 1 Williston, Section 76. The acceptance of the plaintiff's offer was complete after the acceptance was signed and oral notice thereof communicated to plaintiff.

■ The corporation further pleads that, while its president and secretary affixed the corporate signature to the contract, they did so without authority.

In this behalf it is urged, first, that the directors did not authorize the sale. But the record is clear that six of the seven directors assembled together did, upon consideration of the matter, authorize the

sale. The meeting was not a regular one, nor one called pursuant to the corporate regulations or by-laws, but the directors did assemble to the number indicated and did act in the premises. The fact that the meeting was irregularly called and informally conducted was no violation of law, but at most a transgression against either the regulations of the corporation or the by-laws of the directors. Of these regulations and by-laws, and of the facts surrounding the meeting, the plaintiff was wholly ignorant.

"Innocent third persons dealing with a corporation may assume that the meeting was regular, and their rights cannot be defeated by a failure to give the proper notice." 2 Thompson on Corporations (3d Ed.), Section 1242.

"The rule is that illegality or irregularity in a directors' meeting cannot be set up to defeat the rights of innocent third persons dealing with a corporation." 3 Fletcher on Corporations, Section 1894.

It is further urged in this behalf that in the instant case the contract, if enforceable, bound the defendant to dispose of all its property, and that a corporation may not sell all its assets except it comply with the provisions of Section 8710 *et seq.*, General Code. In this case no claim is made that the provisions of these sections were followed. Section 8710 provides that no corporation "shall sell its entire property and assets to any person * * * unless three-fourths of the directors of such corporation authorize the execution of an agreement therefor prescribing the terms, considerations and conditions thereof."

By Sections 8711 and 8712 such agreement shall be

submitted to the stockholders, and shall be binding only when the holders of three-fourths of the stock approve the same. This act is entitled to no broader interpretation than its plain terms import. It was enacted for the purpose of regulating those transactions that result in the absorption of one corporation by another. It prohibited the sale of corporate assets to a trust and undertook to regulate all those transfers that result in the selling corporation passing out of business. It contemplated the probability that the sale would be made in exchange for stocks and bonds or other like valuables. It provided that, after a sale was consummated, the dissenting stockholder could by the special proceeding provided therein compel the corporation to purchase from such dissentient the stock he had in the corporation. Bearing in mind these peculiar provisions, it must be observed that the statute does not undertake to reach the sale by a corporation of all its tangible property, or all its real estate, but only applies when the corporation undertakes to "sell its entire property and assets."

Without any detailed knowledge of the defendant's business, we see that it had legal title on June 1, 1926, to real estate of the approximate value of $100,000. It had cash in bank in an amount something like $2,000. It was by its acceptance of the plaintiff's offer disposing of $100,000 worth of its assets, but not of all of them. It was *eo instanti* becoming possessed of $100,000 worth of cash or credits. It was changing the form, but not the value, of its property, and not even the form of all that property, for the $2,000 bank deposit was untouched. The defendant corporation was organized for the

purpose of buying, selling, and dealing in real estate. If the position of the defendant is correct, it could not carry on that business by dealing in the only property it had yet acquired except by the concurrence of three-fourths of the stockholders. That is to say, while a mere majority of the directors and a majority of the stockholders might dissolve the corporation, under Section 8738, General Code, and compel the sale of the property, three-fourths of the directors plus three-fourths of the stockholders were requisite to the transaction of the very business it was incorporated to perform.

The conclusion thus reached is not out of harmony with anything said or decided in *Cyclone Drill Co.* v. *Zeigler, Admx.*, 99 Ohio St., 151, 124 N. E., 131. An inspection of the record on file in the Supreme Court shows that in that case it was alleged in the petition and admitted in the answer that:

"The directors of said, the Cyclone Drill Company, did sell to the defendant, the Sanderson-Cyclone Drill Company, the entire property and assets of the said company."

The Cyclone Drill Company had admittedly undertaken to dispose of all of its property, and the sale was admittedly subject to the provisions of Section 8711 *et seq.*, General Code. A dissatisfied stockholder had filed notice of his dissatisfaction, had demanded that his stock be purchased, and had had the value thereof judicially determined. The suit in that case was to realize upon the value of his stock so determined. The decision of the Supreme Court went no further than to hold that, where a sale was made under the provisions of the sections referred to, it was the duty of the purchaser to

ascertain whether the corporation disposing of all its property was in fact complying with the statutes made in that behalf. The case is in no sense an authority for determining what constitutes a sale by a corporation of all its property.

In the instant case, the facts are within neither the letter nor spirit of the statutes invoked.

*Decree for plaintiff.*

MIDDLETON, P. J., concurs.

MIDDLETON, P. J., and MAUCK, J., of the Fourth Appellate District, sitting in place of Judges SULLIVAN, VICKERY and LEVINE, of the Eighth Appellate District.