**INDUSTRIAL HEAT TREATING COMPANY, INC., Appellant,**

v.

**INDUSTRIAL HEAT TREATING COMPANY; Toledo Stamping, Appellee.**

[Cite as *Indus. Heat Treating Co., Inc. v. Indus. Heat Treating Co.* (1995), 104 Ohio App.3d 499.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–93–358.

Decided June 9, 1995.

**500**

*Charles M. Boss,* for appellant.

*William M. Connelly,* for appellee.

---

ABOOD, Presiding Judge.

This is an appeal from a judgment of the Lucas County Court of Common Pleas which, following a jury verdict, dismissed the claim of appellant, the Industrial Heat Treating Company, Inc., for damages arising out of the alleged negligent and/or fraudulent misrepresentation of appellee, Toledo Stamping and Manufacturing Company ("Toledo Stamping"), during negotiations for appellant's acquisition of the Industrial Heat Treating Company ("Old IHT").

On appeal, appellant sets forth the following nine assignments of error:

"Assignment of Error No. 1. The court below erred when it instructed the jury that it is only when the parties to a written contract specifically agree that delivery is essential to the making of a contract that there is no agreement without delivery.

"Assignment of Error No. 2. The court below erred when it instructed the jury that the actual delivery or non-delivery of a contract is not the final test of completion of the contract unless there is a provision in the contract making delivery a condition precedent to the effectiveness of the contract.

"Assignment of Error No. 3. The court below erred when it instructed the jury that appellant had the burden of proving by a preponderance of the evidence that delivery of the signed Release of Claims and agreement was an agreed upon condition precedent that had to be satisfied before the Release of Claims and contract would be binding.

"Assignment of Error No. 4. The court below erred when it instructed the jury that if it found that there was no agreement making delivery a condition precedent to the effectiveness of the Release of Claims and Agreement, then it should find in favor of appellee.

"Assignment of Error No. 5. The court below erred when it instructed the jury that appellant claimed the Release of Claims and Agreement were not

binding because the parties agreed that the contract would not be binding until the delivery of the executed documents had occurred.

"Assignment of Error No. 6. The court below erred when it instructed the jury that a party asserting additional terms to a contract had the burden of proving those additional terms.

"Assignment of Error No. 7. The court below erred when it failed to instruct the jury that any ambiguity in the execution in counterparts clause should be construed against the appellee, whose counsel drafted the ambiguous clause.

"Assignment of Error No. 8. The court below erred when it denied the Motion for Summary Judgment submitted by appellant on August 20, 1993, and the motions for directed verdict made by appellant at the close of appellee's evidence and the close of all the evidence in the case.

"Assignment of Error No. 9. The court below erred when it refused to give appellant's proposed jury instructions on "Meeting of the Minds" and "Agreed upon acceptance procedure."

The facts which are relevant to the issues raised on appeal are as follows. In early 1989 appellant, one of a group of companies known collectively as Stratagem Industrial Capital Inc., acquired Old IHT, a Toledo-based heat-treating company, and changed its name to the Industrial Heat Treating Company, Inc. At the time appellee, Toledo Stamping, a manufacturer of parts for the automotive industry, was Old IHT's largest customer.

After appellant acquired Old IHT, Toledo Stamping began sending parts to a competitor for heat-treating. This resulted in a significant decline in the volume of parts that appellant processed, which in turn caused appellant to suffer severe financial losses. On December 17, 1990, appellant filed its original complaint against Old IHT and Lawrence Albright and Charles Wolfe, who, at the time of the sale in 1989, were officers and shareholders of Old IHT. In the complaint appellant alleged that "Old IHT made several representations and warranties that were false and inaccurate" in the Asset Purchase Agreement, the terms of which were negotiated as part of the sale. Specifically, appellant alleged that while negotiations were going on, Old IHT knew that Toledo Stamping was in the process of shifting the bulk of its heat-treating business to another company but did not reveal that information to appellant and, as a result, appellant suffered more than $5 million in damages. On February 14, 1991, an answer and crossclaim were filed by codefendant Charles Wolfe, and on February 22, 1991, a joint answer was filed by Old IHT and codefendant Lawrence Albright.[1]

---

1. Appellant's claims against Old IHT, Wolfe and Albright were separated from its claims against appellee and are not at issue in this appeal.

In early 1991, appellant gave notice that it intended to pursue a claim against appellee that was similar to the then pending claim against Old IHT. In April 1991, during negotiations which were initiated to avoid litigation, appellant suggested that appellee purchase the heat-treating business, but the proposal was rejected. Negotiations continued through June and into July, during which the parties discussed possible ways of salvaging their business relationship. As a result of those negotiations, a release of claims and an agreement were drafted and copies of both documents were sent to the attorneys representing the respective parties.

On July 23, 1991, Simon Shane, appellant's chairman of the board, signed copies of both the release and the agreement in Toledo at the office of appellant's attorney, Richard Kerger, who was out of town at the time. On the same day James Terlizzi, appellee's president, signed identical copies of both documents in Columbus at the office of appellee's attorney, Carl Smallwood. Each signature was witnessed and notarized.

The release contained a "counterparts" clause, which states:

"This Release of Claims may be executed in any number of counterparts, each of which shall be deemed to be an original and all of which together shall be deemed to be a single document." [2]

The release of claims also stated, immediately above the signature lines:

"IN WITNESS WHEREOF, the parties, intending to legally bind themselves, hereto have executed this Release as of the date first written above."

Copies of the executed documents were never exchanged by the parties.

In spite of their efforts to resume the business relationship, in July and August 1991, appellant's financial situation continued to worsen due to an insufficient amount of work and the fact that appellant could neither borrow sufficient funds to sustain its operation nor persuade its union employees to accept wage concessions. In mid-August 1991, appellant notified appellee, along with its other customers, that it could no longer remain in business and immediately closed its heat-treating plant.

On November 13, 1991, appellant filed an amended complaint which named appellee as a defendant and alleged that during negotiations with Old IHT, assurances from appellee's representatives that the business relationship between Old IHT and Toledo Stamping was sound were "false and inaccurate representations, [made] intentionally, maliciously, and with knowledge of their falsity, for the purpose of deceiving [appellant] and inducing it to enter into the Asset

---

2. The agreement contained an identical clause, with the term "Agreement" substituted for "Release of Claims."

Purchase Agreement." Appellant also alleged that the statements made by appellee were grossly negligent and constituted a breach of the terms of the asset purchase agreement, and demanded compensatory damages of more than $5 million and punitive damages of $5 million, as well as interest, costs and attorney fees.

On January 3, 1992, appellee filed its answer, in which it denied appellant's allegations of fraud and misrepresentation and raised the affirmative defenses of release and accord and satisfaction. On that same day, appellee filed a motion for summary judgment and a memorandum in support, in which it argued that appellant's claim against it was barred by the release executed on July 23, 1991, the consideration for which was the agreement, because the parties' concurrent execution of the release and agreement in counterpart indicated that both sides intended to be bound on that date and that the release would have been honored by appellant but for its business failure. Appellant responded in its memorandum in opposition to summary judgment that (a) the release and agreement were never effective because there was no delivery, *i.e.*, a physical exchange, of the executed documents; and (b) sworn statements in two affidavits by Simon Shane, which were attached to its memorandum in opposition, demonstrate that there were genuine issues of material fact as to whether the parties agreed that delivery was essential to the validity of the release, and whether additional financing and concessions from the labor union were conditions precedent to the implementation of the agreement. On April 9, 1992, appellee filed its reply and on February 16, 1993, the trial court filed its judgment entry in which it stated that "[i]n the case *sub judice*, Simon Shane's affidavits raise an issue of fact whether delivery was a condition precedent" and, "[a]ccordingly, this Court must deny [appellee's] motion for summary judgment."

On August 20, 1993, appellant filed its own motion for summary judgment and memorandum in support, in which it argued that (a) pursuant to Ohio law, unless the parties agree to waive the delivery requirement there must be delivery of a written instrument before it is effective, (b) the parties never discussed whether or not delivery was necessary, and (c) the language of the counterparts clause, which is not ambiguous, does not establish that the parties waived the delivery requirement. On August 24, 1993 appellee filed a memorandum in opposition to summary judgment, in which it argued that physical delivery is not a requirement for the validity of a written contract in Ohio or any other jurisdiction, unless the parties expressly agree that it is a condition precedent. At the same time, appellee filed a cross-motion for summary judgment in which it argued that it was entitled to summary judgment as a matter of law since appellee admitted in a memorandum in support of its second motion for summary judgment that the parties never discussed the issue of delivery. On that same day, appellant filed a

supplemental brief in support of its motion for summary judgment, in which it reasserted its position that there never was an effective release because the documents were never delivered and, therefore, that it was immaterial whether or not the parties discussed delivery as a condition precedent to the effectiveness of the release. The trial court heard oral arguments in support of summary judgment from both parties.

On August 25, 1993, the trial court filed a judgment entry in which it found that "the issue of delivery was *not* negotiated by the parties to the agreement and release and is *not* addressed within the text of the agreement and release. Both parties have raised genuine issues of material fact as to the actions and intent of the parties. Hence, both motions are denied." (Emphasis *sic.*)

On November 8, 1993, a jury trial was held on the bifurcated issue of the validity of the release and agreement. Since appellee bore the burden of establishing its affirmative defense, the trial court ordered that the presentation of witnesses would be reversed. At trial, James Terlizzi testified generally as to the negotiations leading up to the July 23, 1991 signing of the release and agreement and stated that he was not aware of any conditions precedent to their validity. Terlizzi's attorney, David Cupps, testified as to the negotiations between the parties and stated his opinion that a counterparts clause is placed in a document so that "you can have a contract that is signed at the same time * * * but once the signatures go on, the contract is a contract, and all of the pieces of paper, wherever they are, are one contract, and that's what a counterparts clause does." Carl Smallwood, appellee's attorney, testified that the Release and Agreement had undergone several revisions between June 3, and July 23, 1991 and that additional conditions or contingencies had never been discussed. Appellee then called as a witness Simon Shane, who testified on cross-examination that he told Smallwood on July 23, 1991, that "there's a number of things I have to do before we can do this deal, that was after the execution of the document and leaving it behind, right, and the earlier part that lasted I would say the majority of that 25 minutes were my concerns about the agreement, that I didn't think it was a very good deal for us * * *." Appellee also called as a witness appellant's attorney, Richard Kerger, who agreed on cross-examination that he had never informed appellee that there were specific conditions precedent to the validity of the release and agreement and then testified on direct examination that the parties had never discussed the issue of delivery. When appellee concluded its evidence, appellant moved for a directed verdict, which was denied.

Appellant then called as a witness Kerger's personal secretary, Brigid Matthews, who testified on direct examination that she watched Shane sign the documents on July 23 and that at that time he told her "not to release them until he spoke with Rick [Kerger] in person." Other witnesses called by appellant

included S. Michael Zelie, appellant's chief financial officer, and David Bell, a representative of the Royal Bank of Scotland, who testified generally as to appellant's financial condition at the time the release and agreement were executed.

At the close of all of the evidence a discussion was held on the record but out of the hearing of the jury concerning appellant's proposed jury instruction that, since the language in the counterparts clause was ambiguous, it must be construed against appellee, the drafter. The trial court refused to give the requested instruction, finding that the evidence showed that the clause was included after "there were comments exchanged back and forth" by both sides and that "it would be unfair to give that charge." The trial court then charged the jury as follows on the issue of necessity of delivery:

"It is only when the parties agree that delivery is essential to the making of the contract that there is not agreement without delivery. The actual delivery or nondelivery of a contract is not the final test of completion of the contract unless there is a provision in the contract that makes delivery a condition precedent to the effectiveness of the contract."

As to the issue of whether the parties agreed to make delivery a condition precedent to the validity of the release and agreement, the trial court instructed the jury as follows:

"[Appellant] has alleged that delivery was a condition precedent to when the written release of claims and agreement would become effective. On that issue, [appellant] has the burden of proving by a preponderance of the evidence that delivery of the executed written agreement was an agreed upon condition before the release of claims and agreement would be binding.

"If you find that there was no agreement making delivery a condition precedent to the effectiveness of the release of claims and agreement, then you should find in favor of [appellee], assuming that you have previously found that there was a valid and binding contract.

"In this case [appellant] is claiming that the release and agreement were not binding because the parties agreed that the contract would not be binding until the delivery of the executed documents occurred. On this issue [appellant] has the burden of proof by a preponderance of the evidence consistent with the Court's previous instruction on that matter."

As to the issue of whether the alleged delivery requirement was an additional term to which the parties assented, the trial court instructed the jury as follows:

"A party asserting additional terms to the agreement has the burden of proving those additional terms. In such a situation, evidence of an oral agreement is admissible to show a condition precedent as to when a written contract

should become effective but it is not admissible to vary or contradict the written agreement itself."

At the conclusion of the trial, the jury found in favor of appellee on its affirmative defense of release. A timely appeal was filed.

■ Appellant's first four assignments of error will be considered together, since they all relate to its argument that the trial court erred when it refused appellant's request to instruct the jury that delivery is necessary to the validity of a written contract. Appellant asserts generally that, pursuant to Ohio law, "the failure of one party to a written agreement to deliver a signed copy of that agreement to the other party is prima facie evidence of the fact that the agreement is incomplete," and that a party to a written contract may not avoid the effect of the "base line" rule requiring delivery unless there is constructive delivery of a written contract or the parties to a written contract agree to waive the requirement. In support of its argument, appellant refers to the testimony of Shane and Kerger that the parties never discussed the issue of delivery and to their respective beliefs and expectations that the release and agreement would not be effective until they were physically delivered to appellee.

Appellee responds that the instruction was properly given because (a) there is no rule in Ohio that written contracts are not binding unless they are physically delivered, (b) it is undisputed that the parties never agreed that delivery was a condition precedent to their being bound by the release and agreement, and (c) there was ample evidence presented at trial that the parties intended to be bound without physical delivery of the documents.

■ Ordinarily, requested jury instructions must be given only if they are " 'correct statements of the law applicable to the facts in the case and reasonable minds might reach the conclusion sought by the instruction.' " *Murphy v. Carrollton Mfg. Co.* (1991), 61 Ohio St.3d 585, 591, 575 N.E.2d 828, 832, quoting Markus & Palmer, Trial Handbook for Ohio Lawyers (3 Ed.1991) 860, Section 36:2. On appeal, the trial court's instructions to a jury " 'may not be judged in artificial isolation, but must be viewed in the context of the overall charge.' " *State v. Price* (1979), 60 Ohio St.2d 136, 141, 14 O.O.3d 379, 382, 398 N.E.2d 772, 775, quoting *Cupp v. Naughten* (1973), 414 U.S. 141, 146–147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368, 373.

■ Under Ohio law, "[a] release, or compromise agreement, is a particular kind of contract, and, like other contracts, requires a definite offer and an acceptance thereof * * * [and] must be the result of a meeting of the parties' minds in order to be binding." *Noroski v. Fallet* (1982), 2 Ohio St.3d 77, 79, 2 OBR 632, 633, 442 N.E.2d 1302, 1304.

The construction of written contracts is a matter of law, and courts will give common words in a written instrument their plain and ordinary meaning, unless an absurd result would follow or there is clear evidence of another meaning from the face or overall contents of the instrument. *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146, at paragraphs one and two of the syllabus. Only if the meaning of a contract term cannot be determined from the four corners of the contract will a factual determination of intent be necessary to supply the missing term. *Inland Refuse Transfer Co. v. Browning–Ferris Industries of Ohio, Inc.* (1984), 15 Ohio St.3d 321, 15 OBR 448, 474 N.E.2d 271.

On the specific question of the effect of delivery, Ohio case law has been very limited. In *Hartford Fire Ins. Co. v. Whitman* (1906), 75 Ohio St. 312, 79 N.E. 459, a case heavily relied upon by both appellant and appellee, the Supreme Court of Ohio considered a situation in which the plaintiff had completed and submitted an application for insurance for his commercial building to the defendant insurance company. Although the application was stamped "Received July 9, 1903" and "issued" by the defendant's agent, the plaintiff was notified by the agent that his application must be accepted by the company before taking effect. No finalized version of the policy was ever issued to the plaintiff and the exact premium was never determined. *Id.* at 318–319, 79 N.E. at 460–461. When the plaintiff's building was destroyed by fire, he notified the company of the loss and was told that the policy was never in effect because his application had not been approved by the company. Although the Ohio Supreme Court ultimately found that the policy was not valid because the insurance company did not intend to be bound, in addressing the role of actual delivery in the formation of a binding contract, the Court stated that:

"It is a general rule that delivery is necessary to the validity of a written instrument. Nevertheless, the actual delivery or non-delivery * * * is not always the final test * * * unless there is such a stipulation in the application or the policy as makes delivery a condition precedent to the consummation of the contract. Actual delivery of the policy may be very strong evidence of the consummation of the contract; but it is not of the essence of the contract, because possession of the policy is not conclusive." *Id.* at 319, 79 N.E. at 460–461.

"Delivery is largely a question of intention, as evidenced by words or acts." *Id.* at 320, 79 N.E. at 461.

In *Indian Refining Co. v. McCombs* (1933), 47 Ohio App. 425, 191 N.E. 919, the Crawford County Court of Appeals held that the delivery of a written employment agreement back to the plaintiff by the defendant was not required, since the parties had an oral agreement "to enter into a written agreement of employment * * * the terms of which were agreed to by both parties * * * but not delivered

to the plaintiff, which, however, was assented to, acquiesced in and approved by the conduct of the defendant." *Id.* at 429, 191 N.E. at 920.

In *Painter v. Brainard–Cedar Realty Co.* (1928), 29 Ohio App. 123, 163 N.E. 57, which is factually similar to this case, the Cuyahoga County Court of Appeals considered a situation in which the plaintiff made a written offer to purchase the defendant-corporation's real estate and tendered a check as a down payment. After receiving the offer, the defendant's officers signed the document, endorsed the check, and had a secretary notify the plaintiff of the acceptance. Later, the acceptance was repudiated by the defendants, their signatures were cut off of the document, their endorsements were erased and the document and check were returned to the plaintiff's agent. When the plaintiff sued for specific performance of the contract, the defendants argued that although they had signed the document, it was nevertheless not effective because it had never been delivered in signed form to the plaintiff. *Id.* at 125, 163 N.E. at 58. The court of appeals ultimately held, on the issue of delivery, that the plaintiff should prevail:

"The law * * * requires no particular form of notice of acceptance. The form of acceptance is determined by the offer. 1 Williston on Contracts, Section 76. While the offeror in the instant case might have required that the offeree communicate his acceptance in writing, he did not do so. * * * The acceptance of the plaintiff's offer was complete after the acceptance was signed and oral notice thereof communicated to plaintiff." *Id.* at 126, 163 N.E. at 58.

In this case, it is undisputed that delivery as a condition precedent was not mentioned in either document and that if the release and agreement are valid without physical delivery their effect is to completely bar appellant's claims against appellee.

■ Upon consideration of the entire record of proceedings before the trial court and the law as set forth above, this court finds that (a) the terms of the release and agreement are unambiguous, (b) there is no general rule in Ohio that requires a contract to be physically delivered before it is binding on the parties without an agreement to the contrary, (c) the trial court correctly instructed the jury on the law as to delivery of a contract in Ohio, and (d) appellant's first four assignments of error are not well taken.

Appellant's fifth and sixth assignments will be considered together since, as appellant asserts, the issues they raise are linked. In his fifth assignment of error, appellant argues that the trial court mischaracterized its position because it "has *never* contended that the parties *agreed* that the contract had to be delivered before it would be binding. The exact opposite is the case." (Emphasis *sic.*) In the sixth assignment of error, appellant does not argue that the trial court misstated the law in charging the jury that the party asserting an

additional contract term bears the burden of proof at trial, but rather asserts that the trial court's prior "mischaracterization" of its position set up "a hurdle that was impossible for appellant to clear" at trial, by forcing it to prove that the nonexistent agreement actually existed.

Appellee responds generally to both arguments that the trial court's instruction was proper, since (a) the issue of an additional term was the only basis on which its first motion for summary judgment was denied; (b) after summary judgment was denied "it properly fell to [appellant] to establish the existence of any additional unwritten terms, such as delivery, upon which it relied to avoid that contract"; and (c) the issue of proving an additional term is nevertheless irrelevant, since appellant admitted there was never such an agreement between the parties.

■ Upon consideration of the entire record of proceedings before the trial court and our decision as to appellant's first four assignments of error, this court finds that (a) it is undisputed that the issue of delivery was not discussed by the parties, (b) it was harmless error for the trial court to instruct the jury as to the burden of proof on the existence of an agreement as to an additional contract term requiring delivery, and (c) appellant's fifth and sixth assignments of error are not well taken.

■ In its seventh assignment of error, appellant asserts that the language of the counterparts clause in both the release and agreement is ambiguous since it "does not unambiguously waive the delivery requirement" and, therefore, the trial court should have instructed the jury that it must be construed against the party who drafted it, which appellant alleges was appellee.

Appellee responds that (a) the counterparts provision was inserted in both documents during negotiations and that appellant could have asked to have it changed at any time, and (b) the clause is not ambiguous because the disagreement between the parties is as to the effect of its existence in the documents and not as to its literal meaning.

Upon consideration of the record of proceedings before the trial court, our decision as to appellant's first four assignments of error and the law, this court finds that (a) the language of the counterparts clause is not ambiguous; (b) the trial court did not err in refusing, over appellant's objection, to give the requested instruction; and (c) appellant's seventh assignment of error is not well taken.

In its eighth assignment of error appellant argues, based on the same legal principles asserted in support of its first four assignments of error, that it should have been granted either summary judgment before trial or a directed verdict at trial. Appellee does not directly respond to either of these arguments.

In reviewing a summary judgment, this court must apply the same standard as the trial court. *Lorain Natl. Bank v. Saratoga Apts.* (1989), 61 Ohio App.3d 127, 129, 572 N.E.2d 198, 199. Summary judgment will be granted when there remains no genuine issue of material fact, and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). A motion for directed verdict will be granted when the trial court, "after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that on any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party * * *." Civ.R. 50.

Upon consideration of the entire record of proceedings before the trial court and our decision as to appellant's first four assignments of error, this court finds that appellant's eighth assignment of error is not well taken.

In its ninth assignment of error, appellant argues that the trial court should have given its proposed jury instructions on the issues of "[m]eeting of the minds" and "[a]greed upon acceptance procedure," which included language concerning the alleged requirement of delivery, and that its failure to do so "promote[s] uncertainty on the crucial question of when a contract comes into effect."

Appellee responds by asserting that the instructions proposed by appellant are virtually identical to those actually given by the trial court.

Upon making a comparison of the language of the proposed instructions and the ones actually given by the trial court on these issues, this court notes that the only significant difference between them is that appellant's proposed instructions include language relating to its erroneous argument that delivery is required for a contract to be binding unless the parties agree otherwise, while the trial court's instructions correctly reflect Ohio law on that issue.

Upon consideration of the entire record of proceedings before the trial court, the law as set forth above and our decision as to appellant's first four assignments of error, this court finds that the trial court correctly instructed the jury as to the requirements of a meeting of the minds and agreed-upon acceptance and appellant's ninth assignment of error is not well taken.

On consideration whereof, this court finds further that substantial justice has been done the party complaining, and the judgment of the Lucas County Court of Common Pleas is hereby affirmed. Court costs are assessed to appellant.

*Judgment affirmed.*

HANDWORK and SHERCK, JJ., concur.