[Cite as *Knighten v. Erie Islands Resort & Marina*, 2016-Ohio-7108.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
OTTAWA COUNTY

Dena Knighten                                          Court of Appeals No.  OT-15-040

     Appellant                                         Trial Court No. 14CV082

v.

Erie Islands Resort & Marina                 **DECISION AND JUDGMENT**

     Appellee                                          Decided:  September 30, 2016

* * * * *

Jennifer J. Antonini, for appellant.

John A. Coppeler, for appellee.

* * * * *

**OSOWIK, J.**

{¶ 1} Plaintiff-appellant, Dena Knighten, appeals the September 3, 2015 judgment of the Ottawa County Court of Common Pleas, denying her motion for summary judgment and granting summary judgment in favor of defendant-appellee, Erie Islands Resort & Marina ("Erie Islands").  For the following reasons, we reverse the trial court judgment, in part, and affirm, in part.

## I. Background

{¶ 2} On October 28, 2006, Knighten entered into a contract with Erie Islands Resort & Marina to purchase an undivided 1/832 interest in real estate in an area of the resort known as Blue Heron Cove. According to the agreement, Knighten purchased "week number 3 [i.e., the third week in January], unit number 5 beginning year 2008, * * * even years." The purchase price, with closing costs, was $4,550, and the agreement also obligated Knighten to pay a maintenance fee of $660 per year. At the time the parties entered into the agreement, Unit 5 had not yet been constructed. Knighten executed a Pre-Construction Discount Addendum," which provided as follows:

> I understand and acknowledge that my timeshare unit may be under construction at the time I elect to make my exchange or stay. In that event, Erie Islands Resort and Marina may substitute a two bedroom unit, until my unit is complete. I acknowledge that I received a pre-construction discount in exchange for my agreement to the above.

{¶ 3} On July 22, 2007, Knighten purchased a Platinum Club Membership for an additional $4,550. This membership granted Knighten the privilege to use the resort's recreation facilities on a day-use basis, eliminated her maintenance fee, and provided priority, discounted access to other accommodations on the resort, among other things.

{¶ 4} On June 28, 2008, Knighten executed an Erie Islands Marina View Right to Use Agreement, for an additional $2,750. Under this agreement, accommodations at Unit 3 of a marina-front building would be reserved for her annually for the sixteenth week of even-numbered years. She agreed to pay annual dues of $100. As she did when she

2.

signed the first purchase agreement, she signed another Pre-Construction Discount Addendum because the unit had not yet been constructed.

{¶ 5} On March 10, 2014, Knighten filed a lawsuit against Erie Islands claiming that Erie Islands has failed to construct the units identified in the parties' agreements, yet continues to bill her $100 per year for maintenance fees. She also claimed that because the original unit has not been constructed, she has not received the benefits of the Platinum Club Membership that Erie Islands sold to her.

{¶ 6} Knighten's complaint alleges four causes of action: one for breach of contract for Erie Islands' failure to complete construction, and three claims for violations of the Consumer Sales Practices Act ("CSPA"). The first CSPA claim is premised on Erie Islands' failure to complete construction of Blue Heron Cove; the second for its "offer to provide plaintiff a marina view condominium"; and the third for the loss of benefits of the Platinum Club Membership Agreement resulting from its failure to complete construction. She sought damages of $12,550 as to her breach of contract claim, and triple damages plus attorney fees and costs as to each of her three CSPA claims.

{¶ 7} Erie Islands moved for summary judgment on Knighten's claims. It argued that the two pre-construction addenda signed by Knighten expressly provided that the units may be under construction and that Erie Islands may substitute a two-bedroom unit until Knighten's units were complete. It insisted that units were made available to Knighten but she cancelled reservations for the weeks of January 19-26, 2008, January 16-23, 2010, and April 17-24, 2010, and failed to show up for reservations for the weeks

3.

of January 21-28, 2012, April 21-24, 2012, January 18-25, 2014, and April 19-26, 2014. It explained that the maintenance fee of $100 per year was properly charged under the marina view addendum, and the benefits of the Platinum Club Membership were available to her all along. Erie Islands denied that the CSPA applied to Knighten's claims because the contracts involved an interest in real estate.

{¶ 8} Knighten opposed Erie Islands' motion and later filed her own motion for summary judgment. She argued that a reasonable person would have understood the initial purchase agreement to provide that her unit would be constructed by 2008. She pointed out that at his deposition, Erie Islands' president, John Gronvall, testified that the salespeople typically explain to buyers that construction will not be completed on a building until a particular percentage of sales has been made in that particular building; because that percentage had not been reached, her building was not complete and "it's quite possible that it would never get built." Knighten emphasized that the agreement indicated that no oral representations or promises had been relied on and that Erie Islands' practice of postponing construction until a certain number of sales had been made was not set forth in the parties' agreement. She insisted that the recorded deed granted her the right to occupy a specified unit.

{¶ 9} Knighten also maintained that this was not a pure real estate transaction—it was the purchase of an "intangible" right of use of the property—and that the Platinum Club Membership was an "enhanced benefit" and was not an interest in real property.

{¶ 10} The trial court granted summary judgment in favor of Erie Islands and it denied Knighten's motion for summary judgment. It characterized Knighten's agreement

4.

as a purchase of an interest in real estate and it held that the CSPA does not apply to real estate transactions. It further found Knighten's claim for breach of contract not well-taken because she executed the pre-construction addenda, whereby she acknowledged that the units were under construction and that other units may be substituted until completion of her units. In light of Knighten's execution of these addenda, it found no breach of contract.

{¶ 11} Knighten appealed the trial court's ruling, and she assigns the following errors for our review:

> **Assignment of Error Number One**: Trial Court erred in determining Appellee did not breach its contracts with Appellant with regard to the timely construction of the timeshare units Appellee had purchased, as such determination was against the manifest weight of the evidence, and therefore, the court erred in granting the Appellee's Motion for Summary Judgment and denying Appellant's motion for summary judgment.

> **Assignment of Error Number Two**: The Trial Court erred in determining Ohio's Consumer Sales Practices Act did not apply to this case because it was a transaction involving real estate, as such determination was against the manifest weight of the evidence and further, such determination completely ignored the Appellant's purchase of the Platinum Membership which was not a real estate transfer in any way. As such, the

5.

court's granting of Appellee's Motion for Summary Judgment and denying Appellant's motion for summary judgment is in error.

## II. Standard of Review

{¶ 12} Appellate review of a summary judgment is de novo, *Grafton v. Ohio Edison Co.,* 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996), employing the same standard as trial courts. *Lorain Natl. Bank v. Saratoga Apts.,* 61 Ohio App.3d 127, 129, 572 N.E.2d 198 (9th Dist.1989). The motion may be granted only when it is demonstrated:

> (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. *Harless v. Willis Day Warehousing Co.,* 54 Ohio St.2d 64, 67, 375 N.E.2d 46 (1978), Civ.R. 56(C).

{¶ 13} When seeking summary judgment, a party must specifically delineate the basis upon which the motion is brought, *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 526 N.E.2d 798 (1988), syllabus, and identify those portions of the record that demonstrate the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996). When a properly supported motion for summary judgment is made, an adverse party may not rest on mere allegations or denials in the pleadings, but must respond with specific facts showing that there is a genuine issue of material fact.

6.

Civ.R. 56(E); *Riley v. Montgomery*, 11 Ohio St.3d 75, 79, 463 N.E.2d 1246 (1984). A "material" fact is one which would affect the outcome of the suit under the applicable substantive law. *Russell v. Interim Personnel, Inc.*, 135 Ohio App.3d 301, 304, 733 N.E.2d 1186 (6th Dist.1999); *Needham v. Provident Bank*, 110 Ohio App.3d 817, 826, 675 N.E.2d 514 (8th Dist.1996), citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 201 (1986).

### III. Law and Analysis

{¶ 14} In her first assignment of error, Knighten claims that the trial court erred in its conclusion that Erie Islands did not breach its contracts with regard to the timely construction of Knighten's timeshare units. In her second assignment of error, she argues that the court improperly concluded that the agreements with Erie Islands were pure real estate transactions to which the CSPA does not apply. We address each of Knighten's assignments in turn.

### A. Did Erie Islands Breach the Agreements?

{¶ 15} In her first assignment of error, Knighten contends that Erie Islands breached its agreement to build the two units identified in the initial purchase agreement and marina view agreement. While she concedes that she understood that the units were "under construction" and that other inventory would be available to her in the meantime, she insists that what is missing from the contract is the information Gronvall supplied at his deposition: that the units would not be constructed until a certain percentage of units was sold and that, in fact, the units may never be constructed. She maintains that one would not reasonably expect for the units to remain incomplete for an indefinite number

7.

of years.  To that end, she urges that the contracts themselves provided an end date for construction:  2008 as to the original unit, and 2010 as to the marina view unit.

{¶ 16} Erie Islands maintains that the contracts contain integration clauses and are unambiguous and that our review is limited to the four corners of the agreements.  It denies that the agreements promise that construction of the units would be complete by 2008 and 2010, respectively.  It also emphasizes that Knighten provided no evidence that comparable units were not made available to her or that she was unable to exchange her week for a week at another resort.[1]  Accordingly, it maintains that there was no breach of the parties' agreements.  It also insists that Knighten has made no showing that the Platinum Club Membership agreement was breached.

{¶ 17} The construction of written contracts is a matter of law.  *Indus. Heat Treating Co., Inc. v. Indus. Heat Treating Co.,* 104 Ohio App.3d 499, 508, 662 N.E.2d 837 (6th Dist.1995), citing *Alexander v. Buckeye Pipe Line Co.,* 53 Ohio St.2d 241, 374 N.E.2d 146 (1978), paragraphs one and two of the syllabus.  "In construing a written agreement, our objective is to ascertain and give effect to the intent of the parties." *Cont'l Tire N. Am. v. Titan Tire Corp.,* 6th Dist. Williams No. WM-09-010, 2010-Ohio-1355, ¶ 24.  In doing so, "courts will give common words in a written instrument their plain and ordinary meaning, unless an absurd result would follow or there is clear evidence of another meaning from the face or overall contents of the instrument." *Indus. Heat Treating Co., Inc.* at 508, citing *Alexander* at paragraphs one and two of the syllabus.

---

[1] Knighten's purchase permitted her to participate in a reciprocal usage program.

8.

**{¶ 18}** Here, we disagree with Knighten that the agreements promised completion of the units by 2008 and 2010. We interpret the contracts to provide only that Knighten's biannual reservation of the third week of the year would begin in 2008 under the Blue Heron Cove Purchase Contract, and that the first year of occupancy under the Marina View Right to Use Agreement would begin in 2010—not that construction of the specified units would necessarily be completed by those dates. When read in conjunction with the pre-construction addenda, this meant simply that if construction of the units identified in the agreements was not completed by those dates, she had the right to use substitute units for her specified weeks.

**{¶ 19}** Having said this, Gronvall testified at his deposition as follows:

Q: But the particular unit that she was purchasing had not been built yet; is that right?

A: That's correct.

Q: Okay. And to-date, it still has not been constructed; is that right?

A: It's under construction, but typically what we do, to maybe help clarify, we always offer a built constructed week first. And if there is a price activity, then we would offer a week in a pre-constructed, under preconstruction basis and discount that with the understanding that they would use other inventory until the unit was built; and in the event that it was not built, because we have to reach a certain percentage of sales in order to build it, then they would be assigned like inventory in one of the built units.

9.

Q: Okay. So, does it say somewhere here in this contract specifically what you just said * * *?

A: It does say in the preconstruction that Erie Islands may substitute a two-bedroom unit until the unit is complete.

* * *

Q: All right, but getting back to the original contract, this was to begin in the year 2008. It was signed in 2006. I would assume at the time, the idea was that this building would be done by 2008; is that right?

A: Not necessarily. It depends on the percentage of sales in that particular building. So it's quite possible that it would never get built in the context that if, if something occurred and we didn't make any more sales in there, it's always the understanding we would replace that inventory with like inventory in the same, on the same piece of ground.

* * *

Q: Okay. Does it say anywhere here, and I might just be missing it, that her building might not be constructed until a certain percentage has been sold?

A: It does not say that, but that's typically what is told to her, but it does not say that in the addendum; doesn't say that, or it isn't there and it isn't not there.

{¶ 20} Gronvall later clarified in the deposition that while construction of the building was begun, it is not currently under construction and Erie Islands is not actively finishing that building.

{¶ 21} Erie Islands repeatedly points out that its agreements with Knighten contain integration clauses prohibiting the parties from relying on oral representations, and it admits that nowhere in the agreement or addenda does it state that further construction of the units is conditioned on meeting certain sales goals. The pre-construction addenda do provide that substitute units are available while the purchased units are under construction, however, they make no provision for the scenario provided by Gronvall: that the purchased units identified in the agreements may never be constructed at all unless some undefined percentage of the building is sold.

{¶ 22} Here, the agreements clearly indicate that Knighten purchased specified units that were yet to be constructed. The agreements are silent, however, as to when construction of the units would be complete. "When the performance period of a contract is undefined, the law implies that the parties intended and agreed that performance will take place within a reasonable time." *Stone Excavating, Inc. v. Newmark Homes, Inc.*, 2d Dist. Montgomery No. 20307, 2004-Ohio-4119, ¶ 16, citing *Stewart v. Herron*, 77 Ohio St. 130, 147, 82 N.E. 956 (1907). "What constitutes a reasonable time for contract performance is an issue of fact determined by the conditions and circumstances which the parties contemplated at the time the contract was executed." *Id.,* citing *Miller v. Bealer*, 80 Ohio App.3d 180, 182, 608 N.E.2d 1133 (9th Dist.1992). We conclude that this

11.

factual issue is one that requires resolution and that summary judgment was, therefore, inappropriate.

{¶ 23} Accordingly, we find Knighten's first assignment of error well-taken.

## B. Was This a Pure Real Estate Transaction, Rendering the CSPA Inapplicable?

{¶ 24} In her second assignment of error, Knighten contends that her transactions with Erie Islands were not pure real estate transactions, thus the trial court erred in its conclusion that the CSPA is inapplicable. She insists that her interests granted by the agreements with Erie Islands are "intangibles" to which the CSPA applies. She urges that even if the agreements for the purchase of the units were pure real estate transactions, the Platinum Club Membership agreement was not.

{¶ 25} In *Fine v. U.S. Erie Islands Co.*, 6th Dist. Ottawa No. OT-07-048, 2009-Ohio-1531, ¶ 34, we addressed the applicability of the CSPA to a contract for the construction of a resort condominium located on Middle Bass Island. We explained:

> The CSPA provides that no supplier shall commit an unfair, deceptive or unconscionable act or practice in connection with a consumer transaction. R.C. 1345.02 and 1345.03. A supplier is "a seller, lessor, assignor, franchisor, or other person engaged in the business of effecting or soliciting consumer transactions." R.C. 1345.01(C). A consumer is "a person who engages in a consumer transaction with a supplier." R.C. 1345.01(D). A consumer transaction is defined as "a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, franchise, or an intangible, to an individual for purposes that are

12.

primarily personal, family, or household, or solicitation to supply any of these things." R.C. 1345.01(A). It is well-established that the CSPA does not apply to "pure" real estate transactions. *Brown v. Liberty Clubs, Inc.* (1989), 45 Ohio St.3d 191, 193, 543 N.E.2d 783. The CSPA is, however, "applicable to the personal property or services portion of a mixed transaction involving both the transfer of personal property or services and the transfer of real property." *Id.* at the syllabus.

{¶ 26} Erie Islands cites a number of decisions from this court in which it prevailed against other plaintiffs who brought actions against it under the CSPA: *Whitman v. Erie Island Resorts*, 6th Dist. Ottawa No. OT-96-010, 1996 Ohio App. LEXIS 5902 (Dec. 30, 1996), *Ossovicki v. Erie Island Resort & Marina*, 6th Dist. Ottawa No. OT-94-053, 1995 Ohio App. LEXIS 2126 (May 26, 1995), *Kovach v. Erie Island Resort & Marina*, 93 Ohio App.3d 11, 637 N.E.2d 382 (6th Dist.1994), and *Mierke v. Erie Island Resort & Marina*, 6th Dist. Ottawa No. OT-95-014, 1995 Ohio App. LEXIS 5000 (Nov. 9, 1995).

{¶ 27} In *Kovach*, we rejected plaintiff's claim that the contract at issue was a "prepaid entertainment contract." *Id.* at 13. In *Mierke*, we decided the case based on the statute of frauds without addressing plaintiff's assertion that the parties' agreement was a "mixed transfer of both services and real property." *Id.* at *8, 14-15. In *Ossovicki*, it appears that the only agreement at issue was the agreement for the purchase of plaintiff's 1/15,000 interest in real property, thus we concluded that it was a real estate transaction to which the CSPA did not apply. *Id.* at *2, 6-7. And in *Whitman,* we described that "the

13.

contract at issue is one for the purchase of an undivided interest in real property." *Id.* at *7. We went on to state that the CSPA does not apply to such real estate transactions. *Id.* at *12.

{¶ 28} Here, however, there are three agreements (with various addenda) at issue: (1) the Blue Heron Purchase Contract, (2) the Platinum Club Membership Agreement, and (3) the Erie Islands Marina View Right to Use Agreement.

{¶ 29} The Blue Heron Cove Purchase Contract is an agreement "to purchase * * * real property" and it grants Knighten an "undivided 1/832 interest in fee simple as tenant-in-common." A warranty deed evidencing the conveyance was filed with the county recorder. Consistent with our decisions in *Ossovicki* and *Whitman,* we agree with the trial court that this was a real estate transaction to which the CSPA does not apply. We find the same to be true with respect to the Erie Islands Marina View Right to Use Agreement. Under that agreement, Knighten "purchase[d] the right to use one of the Marina View Units."

{¶ 30} The Platinum Club Membership Agreement is different, however. This transaction, by its own terms, was not one for real property. The stated "purpose" of the agreement is as follows:

> This MEMBERSHIP grants a right to use facilities and services solely for MEMBER'S recreation and enjoyment. This MEMBERSHIP is neither sold nor purchased as a financial investment. *MEMBER acquires no legal or beneficial interest in RESORT or its assets and no right or interest in real property,* contract rights or business of RESORT.

14.

MEMBER is not entitled to any share of income, gain or distribution of or by RESORT. Nor does MEMBERR acquire any voting rights in RESORT or pertaining to its business or any rights to participate in RESORTS management. (Emphasis added.)

**{¶ 31}** Insofar as the agreement specifically states that it conveys no interest in real property, we cannot say that it is a real estate transaction. We, therefore, find that the CSPA applies.

**{¶ 32}** Finally, Erie Islands argues that the statute of limitations bars Knighten's CSPA claims. Erie Islands raised this defense in its answer, but did not argue it in its summary judgment briefing. This is ordinarily the type of defense that should be raised in the trial court on summary judgment. Although we will not go so far as to say that this defense has been waived by Erie Islands' failure to raise it in its motion for summary judgment, we decline to address this argument. This is because in a CSPA claim, "'the statute of limitations commences to run from the date of the occurrence of the violation, which is not necessarily the date of any underlying transaction.'" *Price v. KNL Custom Homes, Inc.*, 2015-Ohio-436, 28 N.E.3d 640, ¶ 16 (9th Dist.), quoting *Montoney v. Lincoln Logs, Ltd.,* 10th Dist. Franklin No. 06AP-284, 2007-Ohio-236, ¶ 26. "'[A] CSPA violation may occur before, during, or after the underlying consumer transaction.'" *Id.* Because the trial court granted summary judgment to Erie Islands, the record is not developed enough to determine the date of the alleged occurrence of the violation in this case. We leave this matter for resolution by the trial court.

15.

**{¶ 33}** We, therefore, find Knighten's second assignment of error well-taken in part, and not well-taken, in part.

## IV. Conclusion

**{¶ 34}** We find Knighten's first assignment of error well-taken, and we find her second assignment of error well-taken, in part, and not well-taken, in part. We reverse the September 3, 2015 judgment of the Ottawa County Court of Common Pleas to the extent that it granted Erie Islands' motion for summary judgment on Knighten's first and fourth causes of action, and we remand for further proceedings. With respect to Knighten's breach of contract claim, we find that there are factual issues to be resolved, thereby rendering summary judgment inappropriate. And with respect to her CSPA claims, we make no findings as to the merit of those claims, but we reverse to the extent that the trial court found the CSPA inapplicable to the transaction involving the Platinum Club Membership agreement. Erie Islands is ordered to pay the costs of this appeal under App.R. 24.

Judgment affirmed, in part<br>and reversed, in part.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Arlene Singer, J.                     _____

                                                            JUDGE

Thomas J. Osowik, J.                

                                                            _____

James D. Jensen, P.J.                                                                     JUDGE
CONCUR.

                                                            _____
                                                            JUDGE

16.